FILED

2010 JUL 29  PM 4: 09

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY_____ DEPUTY

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

January 2010 Grand Jury

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. '10 CR 3044 ▮ WQH |
| Plaintiff, | I N D I C T M E N T |
| v. | Title 18, U.S.C., Sec. 1962(d) - Conspiracy to Conduct Enterprise Affairs Through A Pattern of Racketeering Activity; Title 18, U.S.C., Sec. 1963 - Criminal Forfeiture |
| ARMANDO VILLAREAL HEREDIA (1), aka Gordo, aka Gordo Villareal, | |
| RUBEN DARIO CASTRO PEREZ (2), aka Compadre, aka Choques, | |
| IVAN CANDELARIO MAGANA HEREDIA (3), aka Soldado, | |
| JOSE ALFREDO NAJERA GIL (4), | |
| CARLOS COSME (5), | |
| MARIO ESCAMILLA (6), aka Unico, | |
| IGNACIO ESCAMILLA ESTRADA (7), aka Uno, aka Senor, | |
| FAUSTO ESCAMILLA ESTRADA(8), aka Taliban, | |
| EDGAR GUSTAVO ESCAMILLA (9), aka Dies, | |
| JESUS QUINONES MARQUEZ (10), aka Rinon, | |
| JOSE ANTONIO ORTEGA NUNO (11), | |
| EDGAR LOPEZ DE-ANDA DAHER (12), aka Pollito, | |
| JOSE ALEJANDRO FLORES MEZA (13), aka Shakira, | |
| ALICIA MARTINEZ (14), aka Comadre, | |
| JUAN CARLOS MAGANA HEREDIA (15), | |
| OSCAR DANIEL MONTOYA MORA (16), | |
| JORGE ALBERTO RAMIREZ PONCE (17), aka Betote, | |
| OMAR MARTINEZ (18), aka Nino, | |

TWR:lml:San Diego
7/28/10

```
 1   JONATHAN VALLE (19),                    )
          aka Reaper,                        )
 2   ARMANDO CASTILLO (20),                  )
          aka Choco,                         )
 3   MIKAEL DANIEL BLASER (21),              )
          aka Troubles,                      )
 4   ENRIQUE SALINAS, JR. (22),              )
          aka Playboy,                       )
 5   RAUL MORENO (23),                       )
          aka Flaco,                         )
 6   MIGUEL SORIA (24),                      )
          aka Mikey,                         )
 7   PERLA YADIRA FLORES (25),               )
          aka P,                             )
 8   LUZ MARIA BENAVIDEZ                     )
              MARTINEZ (26),                 )
 9       aka Araceli,                        )
     BRIDGETTE REYNOSO (27),                 )
10       aka B,                              )
     JORGE HUMBERTO LORA (28),               )
11       aka Georgie,                        )
     CHRISTOPHER ADRIAN RUIZ (29),           )
12       aka Sneaky,                         )
     RICHARD GILBERT FAVELA (30),            )
13       aka Tiny,                           )
     HUMBERTO TORRES MENDOZA (31),           )
14       aka Tito,                           )
     JUAN CARLOS RIQUE AGUIRRE (32),         )
15       aka JC,                             )
     TELLIE KRESCHMER (33),                  )
16   HECTOR MONTES (34),                     )
         aka Toxic,                          )
17       aka Little Spikey,                  )
     JOSE CONTRERAS (35),                    )
18       aka Pepe,                           )
         aka Dandi,                          )
19   HASSAIN ALZUBAIDY (36),                 )
         aka Arab,                           )
20   OMAR MORA (37),                         )
     ULISES VALENZUELA (38),                 )
21   BENJAMIN AVENDANO (39),                 )
         aka Peso,                           )
22   JENNIFER ESCAMILLA (40),                )
     ARACELI VARELA (41),                    )
23       aka Uvia,                           )
     ROCIO LOPEZ (42),                       )
24   KEVIN LUIS (43),                        )
         aka Listo,                          )
25                                           )
                    Defendants.              )
26   _____)

27       The grand jury charges:

28   //
```

TWR:lml:San Diego
7/28/10

1

## Count 1

2

### THE ENTERPRISE

3    1.   At various times material to this Indictment:

4         a.   Defendants ARMANDO VILLAREAL HEREDIA, aka Gordo,

5    aka Gordo Villareal, RUBEN DARIO CASTRO PEREZ, aka Compadre,

6    aka Choques, IVAN CANDELARIO MAGANA HEREDIA, aka Soldado, JOSE ALFREDO

7    NAJERA GIL, CARLOS COSME, MARIO ESCAMILLA, aka Unico, IGNACIO

8    ESCAMILLA ESTRADA, aka Uno, aka Senor, FAUSTO ESCAMILLA ESTRADA,

9    aka Taliban, EDGAR GUSTAVO ESCAMILLA, aka Dies, JESUS QUINONES

10   MARQUEZ, aka Rinon, JOSE ANTONIO ORTEGA NUNO, EDGAR LOPEZ DE-ANDA

11   DAHER, aka Pollito, JOSE ALEJANDRO FLORES MEZA, aka Shakira, ALICIA

12   MARTINEZ, aka Comadre, JUAN CARLOS MAGANA HEREDIA, OSCAR DANIEL

13   MONTOYA MORA, JORGE ALBERTO RAMIREZ PONCE, aka Betote, MIKAEL DANIEL

14   BLASER, aka Troubles, JONATHAN VALLE, aka Reaper, ARMANDO CASTILLO,

15   aka Choco, OMAR MARTINEZ, aka Nino, ENRIQUE SALINAS, JR., aka Playboy,

16   RAUL MORENO, aka Flaco, MIGUEL SORIA, aka Mikey, PERLA YADIRA FLORES,

17   aka P, LUZ MARIA BENAVIDEZ MARTINEZ, aka Araceli, BRIDGETTE REYNOSO,

18   aka B, JORGE HUMBERTO LORA, aka Georgie, CHRISTOPHER ADRIAN RUIZ,

19   aka Sneaky, RICHARD GILBERT FAVELA, aka Tiny, HUMBERTO TORRES MENDOZA,

20   aka Tito, JUAN CARLOS RIQUE AGUIRRE, aka JC, TELLIE KRESCHMER, HECTOR

21   MONTES, aka Toxic, aka Little Spikey, JOSE CONTRERAS, aka Pepe,

22   aka Dandi, HASSAIN ALZUBAIDY, aka Arab, OMAR MORA, ULISES VALENZUELA,

23   BENJAMIN AVENDANO, aka Peso, JENNIFER ESCAMILLA, ARACELI VARELA,

24   aka Uvia, ROCIO LOPEZ, KEVIN LUIS, aka Listo (collectively

25   "Defendants"), and others known and unknown to the grand jury, were

26   members and associates of an organization known as the "Fernando

27   Sanchez Organization" ("FSO"), whose members engaged in, among other

28   things, murder, conspiracy to commit murder, attempted murder,

1  kidnaping, conspiracy to kidnap, attempted kidnaping robbery,
2  conspiracy to commit robbery, attempted robbery, importation of
3  controlled substances into the United States from Mexico, conspiracy
4  to import controlled substances into the United States from Mexico,
5  distribution of controlled substances, conspiracy to distribute
6  controlled substances, money laundering and conspiracy to launder
7  money.  At all relevant times, this organization operated in the
8  Southern District of California and elsewhere.  The organization and
9  the individuals who associate with it for criminal purposes constitute
10 an "Enterprise," as defined by Title 18, United States Code,
11 Section 1961(4) (hereinafter the "Enterprise"), that is, a group of
12 individuals associated in fact.  The Enterprise constituted an ongoing
13 organization whose members functioned as a continuing unit for the
14 common purpose of achieving the objectives of the Enterprise.  The
15 Enterprise was engaged in, and its activities affected, interstate and
16 foreign commerce.

**THE PURPOSE OF THE ENTERPRISE**

17
18     2.    The purposes of the Enterprise included, but are not limited
19 to, the following:

20          a.   Enriching the members of Enterprise through, among
21 other things, the importation and distribution of illegal narcotics
22 in the United States, committing robberies, the kidnaping of
23 individuals in the United Sates  and Mexico, and "taxing" individuals
24 involved in criminal activities within the geographical areas
25 controlled by the Enterprise, to include Tijuana, Mexico, and areas
26 of San Diego, California;

27          b.   Keeping rival traffickers, potential informants,
28 witnesses against the Enterprise, law enforcement, the media, and the

1  public-at-large in fear of the Enterprise, and in fear of its members

2  and associates through threats of violence and violence;

3           c.    Preserving, protecting and expanding the power of the

4  Enterprise through the use of intimidation, violence, threats of

5  violence, assaults and murders;

6           d.    Preserving the continuity of membership in the

7  Enterprise by threatening members, associates and individuals with

8  knowledge of the Enterprise's illegal activities wishing to leave the

9  Enterprise with violence, assault and murder; and

10          e.    Preserving the ongoing viability of the Enterprise by

11 assaulting law enforcement officers attempting to arrest Enterprise

12 members, bribing public officials to secure the release of arrested

13 Enterprise members and making payments to public officials in order

14 to gain access to confidential law enforcement information adverse to

15 the interests of the Enterprise.

16

17
**THE EVOLUTION AND STRUCTURE OF THE ENTERPRISE
AND THE ROLES OF THE DEFENDANTS WITHIN THE ENTERPRISE**

18      3.    The  Fernando  Sanchez  Organization  evolved  from  the

19 now-defunct drug trafficking organization commonly known as the

20 Arellano-Felix drug trafficking organization, or "AFO."  The AFO was

21 historically one of the most prolific and powerful drug trafficking

22 organizations in existence.  When law enforcement officers in Mexico

23 arrested Javier Arellano-Felix and his primary lieutenant, Arturo

24 Villareal Heredia, aka Nalgon, in August 2006, the power void was

25 filled by two individuals: Eduardo Arellano-Felix (a brother of

26 Javier, Benjamin and Ramon Arellano-Felix) and Fernando Sanchez

27 Arellano, aka Ingeniero (a nephew of the Arellano-Felix brothers).

28 //

After Eduardo Arellano-Felix was arrested by Mexican authorities on October 25, 2008, Fernando Sanchez Arellano assumed full control over the remnants of the FSO, which organization then transitioned to the FSO.

4.    At various times material to this Indictment, the defendants had the following roles in the Enterprise.

a.    <u>Lieutenants</u>: Defendants ARMANDO VILLAREAL HEREDIA, aka Gordo, aka Gordo Villareal, RUBEN DARIO CASTRO PEREZ, aka Compadre, aka Choques, and IVAN CANDELARIO MAGANA HEREDIA, aka Soldado, occupied the position of lieutenants within the FSO. As lieutenants, the defendants answered directly to Fernando Sanchez Arellano and were responsible for directing, approving and managing the criminal activities of the Enterprise. Although required to keep Fernando Sanchez Arellano apprised of their decisions, the lieutenants had the ability to sanction all types of criminal activities conducted by Enterprise members, including, murder, kidnaping, drug trafficking and money laundering-related offenses.

b.    <u>Underbosses</u>: Defendants JOSE ALFREDO NAJERA GIL, CARLOS COSME, MARIO ESCAMILLA, aka Unico, IGNACIO ESCAMILLA ESTRADA, aka Uno, aka Senor, FAUSTO ESCAMILLA ESTRADA, aka Taliban, and EDGAR GUSTAVO ESCAMILLA, aka Dies held the position of underbosses within the FSO.   In that capacity, the defendants had management and oversight responsibility for the crew leaders' implementation of the day-to-day criminal activities of the Enterprise.

c.    <u>Corrupt Foreign Law Enforcement Officials</u>: Defendants JESUS QUINONES MARQUEZ, aka Rinon, JOSE ANTONIO ORTEGA NUNO, EDGAR LOPEZ DE-ANDA DAHER, aka Pollito, JOSE ALEJANDRO FLORES MEZA, aka Shakira were either former or current law enforcement officers

1    working for the FSO.  The defendants used their positions within the

2    Mexican   law   enforcement   community   to   obtain   and   disseminate

3    confidential law enforcement information to the FSO, target rivals of

4    the FSO for arrest, obtain confessions from rival organization members

5    to gain intelligence about those organizations, bribe judicial and law

6    enforcement authorities to secure the release of arrested FSO members,

7    to shift responsibility for violent activities from the FSO to rival

8    organizations (both legally and in stories generated by the media),

9    and to obtain law enforcement employee information for the FSO's use

10   in targeting law enforcement officers taking actions adverse to the

11   interests of the Enterprise.

12          d.    Crew Leaders: Defendants ALICIA MARTINEZ, aka Comadre,

13   JUAN CARLOS MAGANA HEREDIA, JORGE ALBERTO RAMIREZ PONCE, aka Betote,

14   and OMAR MARTINEZ, aka Nino held the position of crew leaders in the

15   FSO.   In that role, the defendants implemented and supervised the

16   day-to-day criminal activities of the Enterprise, as directed by the

17   various underbosses.

18          e.    Crew Members: Defendants OSCAR DANIEL MONTOYA MORA,

19   MIKAEL DANIEL BLASER, aka Troubles, JONATHAN VALLE, aka Reaper,

20   ARMANDO CASTILLO, aka Choco, ENRIQUE SALINAS, JR., aka Playboy, RAUL

21   MORENO, aka Flaco, MIGUEL SORIA, aka Mikey, PERLA YADIRA FLORES,

22   aka P, LUZ MARIA BENAVIDEZ MARTINEZ, aka Araceli, BRIDGETTE REYNOSO,

23   aka B, JORGE HUMBERTO LORA, aka Georgie, CHRISTOPHER ADRIAN RUIZ,

24   aka Sneaky, RICHARD GILBERT FAVELA, aka Tiny, HUMBERTO TORRES MENDOZA,

25   aka Tito, JUAN CARLOS RIQUE AGUIRRE, aka JC, TELLIE KRESCHMER, HECTOR

26   MONTES, aka Toxic, aka Little Spikey, JOSE CONTRERAS, aka Pepe,

27   aka Dandi, HASSAIN ALZUBAIDY, aka Arab, OMAR MORA, ULISES VALENZUELA,

28   BENJAMIN AVENDANO, aka Peso, JENNIFER ESCAMILLA, ARACELI VARELA,

1  aka Uvia, ROCIO LOPEZ, and KEVIN LUIS, aka Listo held the role of crew

2  members within the FSO.  In that capacity, the defendants conducted

3  the day-to-day criminal activities of the Enterprise as directed by

4  the crew leaders and underbosses.

5  <center>**THE MEANS AND METHODS OF THE ENTERPRISE**</center>

6      5.   Defendants and their coconspirators and associates used the

7  following methods and means, among others, to conduct and participate

8  in the conduct of the affairs of the Enterprise:

9      a.   Higher  level  members  of  the  FSO  utilized  the

10  multi-tiered organizational structure, including the use of "crew

11  leaders," to insulate themselves from prosecution by distancing

12  themselves from the day-to-day commission of illegal activities;

13      b.   Leaders of the FSO used various cells working for the

14  FSO to commit criminal activities, such that if any one cell and its

15  members were arrested, those individuals would be unable to provide

16  significant details about the overall operation of the FSO;

17      c.   Lieutenants of the FSO used individuals, referred to

18  as "aliniadors," to communicate with other members of the FSO on their

19  behalf in an effort to insulate themselves from law enforcement

20  scrutiny;

21      d.   Defendants, along with other members of the Enterprise,

22  used multiple and changing "stash houses" to compartmentalize the

23  storage of money, narcotics and weapons, such that if law enforcement

24  learned of and searched any one "stash house," only a portion of the

25  FSO assets would be seized;

26  //

27  //

28  //

<center>8</center>

1     e.    When transporting individuals to FSO "stash houses,"
2   the operators of those locations would require the individuals
3   traveling with them to position themselves such that they would be
4   unable to view the route to, and the area surrounding, the "stash
5   house;"

6     f.    Defendants, along with other members of the Enterprise,
7   made specific and detailed plans, including the extensive use of
8   surveillance, compartmentalized teams with specific tasks, and the
9   limited use of firepower, when committing, and attempting to commit,
10  murders and kidnapings;

11    g.    Defendants, along with other members of the Enterprise,
12  deployed individuals to act as post-homicide lookouts, who reported
13  back to the FSO underboss responsible for overseeing the killings;

14    h.    Members of the FSO who were either subjected to
15  retaliatory violent acts from rival organizations or law enforcement
16  scrutiny in Mexico, relocated from Tijuana, Mexico, to San Diego,
17  California, where they continued to direct illegal activities on
18  behalf of the FSO;

19    i.    Defendants, along with other members of the Enterprise,
20  routinely used multiple and changing telephone facilities to
21  communicate regarding their illegal activities in an effort to thwart
22  law enforcement electronic surveillance efforts;

23    j.    Defendants, along with other members of the Enterprise,
24  routinely used code words and coded communications when discussing the
25  illegal activities of the FSO;

26    k.    Members and associates of the FSO targeted law
27  enforcement officers for recruitment into the FSO;

28  //

1          l.    Defendants, along with other members of the Enterprise,

2    obtained significant quantities of narcotics in Mexico, which FSO

3    members   and   associates   imported   into   the   United   States   for

4    distribution;

5          m.    Defendants, along with other members of the Enterprise,

6    arranged to have the proceeds generated from drug sales in the United

7    States transported from the United States to Mexico;

8          n.    Defendants, along with other members of the Enterprise,

9    purchased and sold firearms to generate income for the FSO and to arm

10   members and associates of the FSO for the commission of violent acts;

11   and

12         o.    Defendants, along with other members of the Enterprise,

13   committed robberies in Mexico and the United States to generate income

14   for the FSO.

15                     **THE RACKETEERING CONSPIRACY**

16        6.    Beginning in or about November 2008, and continuing up to

17   and  including  July  22,  2010,  within  the  Southern  District  of

18   California  and  elsewhere,  defendants  ARMANDO  VILLAREAL  HEREDIA,

19   aka  Gordo,  aka  Gordo  Villareal,  RUBEN  DARIO  CASTRO  PEREZ,

20   aka  Compadre,  aka  Choques,  IVAN  CANDELARIO  MAGANA  HEREDIA,

21   aka Soldado, JOSE ALFREDO NAJERA GIL, CARLOS COSME, MARIO ESCAMILLA,

22   aka  Unico,  IGNACIO  ESCAMILLA  ESTRADA,  aka  Uno,  aka  Senor,  FAUSTO

23   ESCAMILLA ESTRADA,  aka  Taliban,  EDGAR  GUSTAVO  ESCAMILLA,  aka  Dies,

24   JESUS QUINONES MARQUEZ, aka Rinon, JOSE ANTONIO ORTEGA NUNO, EDGAR

25   LOPEZ  DE-ANDA  DAHER,  aka  Pollito,  JOSE  ALEJANDRO  FLORES  MEZA,

26   aka Shakira, ALICIA MARTINEZ, aka Comadre, JUAN CARLOS MAGANA HEREDIA,

27   OSCAR DANIEL MONTOYA MORA, JORGE ALBERTO RAMIREZ PONCE, aka Betote,

28   MIKAEL  DANIEL  BLASER,  aka  Troubles,  JONATHAN  VALLE,  aka  Reaper,

                                   10

ARMANDO CASTILLO, aka Choco, OMAR MARTINEZ, aka Nino, ENRIQUE SALINAS, JR., aka Playboy, RAUL MORENO, aka Flaco, MIGUEL SORIA, aka Mikey, PERLA YADIRA FLORES, aka P, LUZ MARIA BENAVIDEZ MARTINEZ, aka Araceli, BRIDGETTE REYNOSO, aka B, JORGE HUMBERTO LORA, aka Georgie, CHRISTOPHER ADRIAN RUIZ, aka Sneaky, RICHARD GILBERT FAVELA, aka Tiny, HUMBERTO TORRES MENDOZA, aka Tito, JUAN CARLOS RIQUE AGUIRRE, aka JC, TELLIE KRESCHMER, HECTOR MONTES, aka Toxic, aka Little Spikey, JOSE CONTRERAS, aka Pepe, aka Dandi, HASSAIN ALZUBAIDY, aka Arab, OMAR MORA, ULISES VALENZUELA, BENJAMIN AVENDANO, aka Peso, JENNIFER ESCAMILLA, ARACELI VARELA, aka Uvia, ROCIO LOPEZ, KEVIN LUIS, aka Listo, and others known and unknown to the grand jury, being persons employed by and associated with the Enterprise (as described above), which Enterprise was engaged in, and the activities of which affected interstate and foreign commerce, did knowingly and intentionally conspire with each other, and with other persons, to violate Title 18, United States Code, Section 1962(c), that is, to conduct and participate, directly and indirectly, in the conduct of the Enterprise's affairs through a pattern of racketeering activity involving multiple acts indictable under State law and punishable by imprisonment for more than one year and the following provisions of federal law:

       a.    California Penal Code, Sections 31 and 187(a) (murder and  aiding and abetting murder);

       b.    California Penal Code, Sections 182 and 187(a) (conspiracy to commit murder);

       c.    California Penal Code, Sections 664 and 187(a)(attempted murder);

//

d.  California   Penal   Code,   Sections   31   and 207(a)(kidnaping   and   aiding   and   abetting kidnaping);

e.  California Penal Code, Sections 182 and 207(a) (conspiracy to kidnap);

f.  California   Penal   Code,   Sections   664   and 207(a)(attempted kidnaping);

g.  California Penal Code, Section 211 (robbery);

h.  California   Penal   Code,   Sections   182   and   211 (conspiracy to commit robbery);

i.  California   Penal   Code,   Sections   664   and   211 (attempted robbery);

j.  Title 21, United States Code, Sections 952 and 960 (importation of a controlled substances);

k.  Title 21, United States Code, Sections 952, 960 and   963   (conspiracy   to   import   controlled substances);

l.  Title 21, United States Code, Section 841(a)(1) (distribution of controlled substances);

m.  Title 21, United States Code, Sections 846 and 841(a)(1) (conspiracy to distribute controlled substances);

n.  Title 18, United States Code, Section 1957 (money laundering); and

o.  Title 18, United States Code, Sections 1956(h) and 1957 (conspiracy to launder money).

//

//

1       7.   It was a further part of the conspiracy that each defendant

2  agreed that a conspirator would commit at least two acts of

3  racketeering activity in the conduct of the affairs of the Enterprise.

4                              **OVERT ACTS**

5       8.   In furtherance of the conspiracy and to accomplish the

6  objects of the conspiracy, the defendants and their coconspirators

7  committed the following overt acts, among others, in San Diego County,

8  within the Southern District of California, unless otherwise

9  specified, on or about the dates set forth below:

10            (1)        On or about February 4, 2009, defendant MARIO

11                       ESCAMILLA stated that he had developed "more

12                       connections," "power" and that he had made

13                       "plans."

14            (2)        On or about July 15, 2009, defendant BENJAMIN

15                       AVENDANO stated that he was working for defendant

16                       FAUSTO ESCAMILLA ESTRADA and other individuals

17                       engaged in smuggling narcotics and committing

18                       violent activities.

19            (3)        On or about July 15, 2009, defendant BENJAMIN

20                       AVENDANO stated that he would have to check on

21                       the background of a person ("CI") in both Mexico

22                       and the United States, to ensure that the CI was

23                       not cooperating with law enforcement authorities,

24                       before defendant BENJAMIN AVENDANO would engage

25                       in criminal activities with the CI.

26  //

27  //

28  //

13

1        (4)      On or about August 31, 2009, defendant BENJAMIN AVENDANO drove a 2004 Dodge Durango bearing California license number 6HLU405 (Durango) containing approximately 396 pounds of marijuana southbound on Interstate 805 in San Diego, California.

(5)      On or about August 31, 2009, defendant MARIO ESCAMILLA drove a 2007 Cadillac Escalade bearing California license number 6DTF679 (Escalade), which was equipped with a hard-wired police-type siren, southbound on Interstate 805 in San Diego, California.

(6)      On or about August 31, 2009, defendant MARIO ESCAMILLA, with defendants HECTOR MONTES and OMAR MARTINEZ as passengers, attempted to use the Escalade to ram into the patrol vehicle of a California Highway Patrol Officer, who was attempting to conduct a traffic stop of the Durango containing approximately 396 pounds of marijuana.

(7)      On or about November 18, 2009, defendant MARIO ESCAMILLA stated that he and his associates were engaged in a transaction involving one ton of marijuana.

(8)      On or about November 18, 2009, defendant HECTOR MONTES possessed a loaded Ruger 9mm handgun bearing serial number 31614813.

//

14

      (9)     On or about December 4, 2009, defendant MARIO ESCAMILLA stated that he was working as an enforcer for a drug trafficking organization based in Tijuana, Mexico, and it was therefore his responsibility to kill members of rival drug trafficking organizations, such as the one headed by Eduardo Garcia-Simental, aka "El Teo" (charged elsewhere).

      (10)    On or about December 10, 2009, defendants MARIO ESCAMILLA, OMAR MARTINEZ, ARMANDO CASTILLO and CI-1 purchased three handguns from defendant JOSE CONTRERAS, which were to be used in a "job," that is, a murder, the "next day."

      (11)    On or about December 11, 2009, at the direction of defendant MARIO ESCAMILLA, defendants RAUL MORENO, ARMANDO CASTILLO, and ENRIQUE SALINAS JR., traveled from San Diego, California, to Tijuana, Mexico, to kill an unidentified individual.

      (12)    On or about December 14, 2009, at the direction of defendants MARIO ESCAMILLA and OMAR MARTINEZ, defendants MIGUEL SORIA, RAUL MORENO and ARMANDO CASTILLO, armed with a handgun, traveled to the Plaza Las Americas shopping mall to commit the robbery of approximately $7,000 from two females making a deposit at a bank.

//
//

(13)    On or about December 14, 2009, at the direction of defendant MARIO ESCAMILLA, defendant RAUL MORENO, armed with a handgun, drove to National City, California, to locate and kill V.A., aka Chimbombis.

(14)    On or about December 17, 2009, defendant MARIO ESCAMILLA informed defendant JUAN CARLOS RIQUE AGUIRRE that ESCAMILLA had found a "huge visa," that is, a method or means to smuggle three tons of marijuana into the United States from Mexico.

(15)    On or about December 17, 2009, defendant MARIO ESCAMILLA and BRIDGETTE REYNOSO met with two individuals at a restaurant in Chula Vista, California, and negotiated for the importation and delivery of a three ton quantity of marijuana.

(16)    On or about December 18, 2009, defendant ARMANDO CASTILLO informed defendants MARIO ESCAMILLA and HASSAIN ALZUBAIDY that CASTILLO had noticed law enforcement surveillance units while making a narcotics delivery earlier that day.

(17)    On or about December 18, 2009, defendants ARMANDO CASTILLO and MIGUEL SORIA possessed approximately 2.4 grams of actual methamphetamine.

//
//
//

(18)  On or about December 19, 2009, defendant JUAN CARLOS RIQUE AGUIRRE provided defendant MARIO ESCAMILLA with the location of C.H. so that defendant MARIO ESCAMILLA could have C.H. killed.

(19)  On or about December 19, 2009, defendant OMAR MARTINEZ placed a telephone call to defendant MARIO ESCAMILLA and stated that he was with "C" (defendant Armando Castillo), "F" (defendant Raul Moreno) and "Saadam Husein" (defendant Hassain Alzubaidy) and that they were ready to find and kill C.H. and C.H.'s father, and that they were just waiting for Escamilla to "give the green light."

(20)  On or about December 19, 2009, at the direction of defendants MARIO ESCAMILLA, HASSAIN ALZUBAIDY, OMAR MARTINEZ, ARMANDO CASTILLO and RAUL MORENO drove to various locations in San Diego for the purpose of locating and killing C.H. and V.A., aka Chimbombis.

(21)  On or about December 21, 2009, defendants MARIO ESCAMILLA, RAUL MORENO, ENRIQUE SALINAS JR., OMAR MARTINEZ, TELLIE KRESCHMER and MIKAEL DANIEL BLASER possessed approximately 176 pounds of marijuana, 1 pound of methamphetamine, 5 to 6 grams of cocaine, an AK-47 assault rifle, a shotgun and a .38 caliber handgun.

//
//

(22)   On or about December 21, 2009, defendants MARIO
ESCAMILLA, RAUL MORENO, ENRIQUE SALINAS JR., OMAR
MARTINEZ, TELLIE KRESCHMER and MIKAEL DANIEL
BLASER discussed killing C.H., V.A. and A.M.

(23)   On or about December 21, 2009, after receiving
permission from defendant MARIO ESCAMILLA,
defendant OMAR MARTINEZ and defendant ARMANDO
CASTILLO, armed with a loaded AK-47 assault
rifle, traveled to a location in the Shelltown
area of San Diego for the purpose of killing an
unidentified gang member.

(24)   On or about December 23, 2009, defendant MARIO
ESCAMILLA arranged to have approximately
120 pounds of marijuana imported into the United
States from Mexico via the Otay Mesa Port of
Entry.

(25)   On or about December 23, 2009, defendants MARIO
ESCAMILLA and RAUL MORENO possessed approximately
120 pounds of marijuana.

(26)   On or about December 27, 2009, defendant JONATHAN
VALLE stated that he wanted to begin working for
defendant MARIO ESCAMILLA selling narcotics and
committing violent crimes.

(27)   On or about December 27, 2009, defendant MARIO
ESCAMILLA told defendant JONATHAN VALLE that
"Panda" and "the bus driver" needed to be "taken
out," that is, those individuals needed to be
killed.

18

(28)  On or about December 27, 2009, defendants MARIO ESCAMILLA and MIKAEL DANIEL BLASER "fronted" a half-ounce of methamphetamine to Jonathan Valle.

(29)  On or about December 28, 2009, defendant OMAR MARTINEZ delivered approximately a half-kilogram of cocaine to defendant JUAN CARLOS RIQUE AGUIRRE.

(30)  On or about December 31, 2009, within the Central District of California, defendant HUMBERTO TORRES MENDOZA possessed approximately three pounds of methamphetamine.

(31)  On January 6, 2010, defendant RAUL MORENO arranged for Jorge Loza Jr. (charged elsewhere) to sell an individual cooperating with the Government ("CI-1") an AK-47 assault rifle for $1,500.

(32)  On or about January 7, 2010, defendants OMAR MARTINEZ and JONATHAN VALLE entered into an agreement to kill A.E.Z.

(33)  On or about January 7, 2010, defendants OMAR MARTINEZ and JONATHAN VALLE possessed a loaded Ruger 9mm pistol bearing serial number 30172546.

(34)  On or about January 8, 2010, defendant OMAR MARTINEZ possessed a loaded Ruger 9mm pistol bearing serial number 30172546.

//

//

//

1   (35) On or about January 8, 2010, defendants JONATHAN

2      VALLE, ARMANDO CASTILLO, MIGUEL SORIA and RAUL

3      MORENO entered into an agreement to kill A.E.Z.

4   (36) On or about January 8, 2010, defendants JONATHAN

5      VALLE, ARMANDO CASTILLO, MIGUEL SORIA and RAUL

6      MORENO possessed a loaded Ruger 9mm pistol

7      bearing serial number 30172546 and 38 rounds of

8      9mm pistol ammunition.

9   (37) On or about January 8, 2010, defendants MARIO

10      ESCAMILLA, ARMANDO VILLAREAL HEREDIA, PERLA

11      YADIRA FLORES, LUZ MARTINEZ, MIKAEL DANIEL BLASER

12      and BRIDGETTE REYNOSO entered into an agreement

13      to kill A.E.Z.

14   (38) On or about January 8, 2010, defendants PERLA

15      YADIRA FLORES and LUZ MARTINEZ lured A.E.Z. to a

16      hotel room in National City, California.

17   (39) On or about January 9, 2010, defendant MARIO

18      ESCAMILLA told defendant MIKAEL DANIEL BLASER

19      that if defendant MIKAEL DANIEL BLASER committed

20      the murder of Zavala, defendant MIKAEL DANIEL

21      BLASER would be respected by the "clika of the

22      senores," that is, the leaders of the Enterprise

23      in Mexico.

24 //

25 //

26 //

27 //

28 //

(40)    On or about January 9, 2010, defendants MARIO ESCAMILLA, BRIDGETTE REYNOSO and MIKAEL DANIEL BLASER waited in the area adjacent to a hotel located in National City, California, for the purpose of shooting and killing A.E.Z. when he left the hotel.

(41)    On or about January 9, 2010, defendant MARIO ESCAMILLA stated that he would use his vehicle to "block" any police cars that gave chase to defendant MIKAEL DANIEL BLASER'S vehicle following the murder of A.E.Z.

(42)    On or about January 11, 2010, defendant MARIO ESCAMILLA expressed disappointment over the fact that Raul Moreno had been "rolling a joint" in the middle of "doing a mission," that is, attempting to locate and kill A.E.Z.

(43)    On or about January 22, 2010, defendant MARIO ESCAMILLA agreed to sell CI-1 a half-pound of methamphetamine for $6,000.

(44)    On or about January 23, 2010, defendant MARIO ESCAMILLA instructed defendants RAUL MORENO and MIKAEL DANIEL BLASER to kill A.E.Z. "using the pants," that is, using long guns.

(45)    On or about January 23, 2010, defendant MIGUEL SORIA possessed approximately 150 pounds of marijuana.

//

//

(46)     On or about January 26, 2010, at the direction of defendants MARIO ESCAMILLA, BRIDGETTE REYNOSO and MIKAEL DANIEL BLASER sold CI-1 a half-pound of methamphetamine (212 grams of actual methamphetamine) for $6,500.

(47)     On or about February 3, 2010, defendant MARIO ESCAMILLA made arrangements with defendant IGNACIO ESCAMILLA ESTRADA to have two females - defendant TELLIE KRESCHMER and a juvenile - body-cavity smuggle a half-pound of methamphetamine into the United States from Mexico.

(48)     On or about February 3, 2010, defendant MARIO ESCAMILLA instructed defendant PERLA YADIRA FLORES to give defendant BRIDGETTE REYNOSO $5,500, which defendant BRIDGETTE REYNOSO then transported from San Diego to Tijuana, Mexico.

(49)     On or about February 3, 2010, in Tijuana, Mexico, defendant BRIDGETTE REYNOSO paid defendant IGNACIO ESCAMILLA ESTRADA $5,500 for a half-pound of methamphetamine.

(50)     On or about February 3, 2010, defendant TELLIE KRESCHMER and a juvenile female smuggled a total of a half-pound of methamphetamine into the United States from Mexico via the San Ysidro Port of Entry.

//
//

(51)   On or about February 3, 2010, defendant RAUL MORENO placed a call to CI-1 and asked if "the girls" were "back safely."

(52)   On or about February 3, 2010, the two female couriers employed by defendants MARIO ESCAMILLA and IGNACIO ESCAMILLA ESTRADA provided CI-1 with the half-pound of methamphetamine (166 grams of actual methamphetamine) they had just smuggled into the United States from Mexico.

(53)   On or about February 3, 2010, defendant CARLOS COSME stated that he had someone who could "run names," that is, run queries in law enforcement data bases, at the "port of entry."

(54)   On or about February 9, 2010, defendant CARLOS COSME agreed to sell an individual cooperating with the Government (CI-3) two pounds of methamphetamine in Tijuana, Mexico, for $18,000.

(55)   On or about February 10, 2010, defendant CARLOS COSME informed CI-3 that he would have Mexican State Judicial Agents deliver two pounds of methamphetamine to CI-3's employees in Tijuana, Mexico.

//
//
//
//
//
//

23

(56)    On or about February 10, 2010, at the direction of defendant CARLOS COSME, Mexican State Judicial Agents delivered approximately two pounds of methamphetamine to defendant IGNACIO ESCAMILLA ESTRADA, who was acting at the direction of defendant ARMANDO VILLAREAL HEREDIA, in Tijuana, Mexico.

(57)    On or about February 10, 2010, defendants ARMANDO VILLAREAL HEREDIA and IGNACIO ESCAMILLA ESTRADA made arrangements to have two female couriers body-cavity smuggle approximately two pounds of methamphetamine into the United States from Mexico via the San Ysidro Port of Entry.

(58)    On or about February 10 and 11, 2010, at the direction of defendant IGNACIO ESCAMILLA ESTRADA, defendant TELLIE KRESCHMER and a juvenile female body-cavity smuggled a total of approximately one pound of methamphetamine into the United States from Mexico via the San Ysidro Port of Entry.

(59)    On or about February 11, 2010, defendant MIKAEL DANIEL BLASER possessed approximately one pound of methamphetamine and a firearm.

//
//
//
//
//
//

24

(60)   On or about February 11, 2010, at the direction of defendant IGNACIO ESCAMILLA ESTRADA and defendant MARIO ESCAMILLA, CI-1 delivered approximately one pound of methamphetamine (436 grams of actual methamphetamine) to a vehicle parked near the intersection of Saturn Boulevard and Coronado Avenue in San Diego.

(61)   On or about February 11, 2010, defendant CARLOS COSME picked up a $9,000 cash payment for the one pound of methamphetamine delivered earlier that day by CI-1.

(62)   On or about February 12, 2010, at the direction of defendants IGNACIO ESCAMILLA ESTRADA, TELLIE KRESCHMER, and a juvenile female attempted to body-cavity smuggle approximately one pound of methamphetamine into the United States from Mexico via the San Ysidro Port of Entry.

(63)   On or about February 12, 2010, defendant MIKAEL DANIEL BLASER possessed approximately three-quarters of a pound of methamphetamine and a firearm.

//
//
//
//
//
//
//

25

(64) On or about February 12, 2010, at the direction of defendant MARIO ESCAMILLA, CI-1 delivered approximately three-quarters of a pound of methamphetamine (321 grams of actual methamphetamine) to a vehicle parked near the intersection of Saturn Boulevard and Coronado Avenue in San Diego.

(65) On or about February 12, 2010, defendant CARLOS COSME picked up a $9,000 cash payment for the three-quarters of a pound of methamphetamine delivered earlier that day by CI-1.

(66) On or about February 16, 2010, defendant MARIO ESCAMILLA provided CI-1 with the names of individuals being targeted for assassination by the Enterprise.

(67) On or about February 17, 2010, defendant RAUL MORENO sold an SKS assault rifle to CI-1 for $1,000.

(68) On or about February 19, 2010, defendant ARMANDO VILLAREAL HEREDIA gave CI-3 permission to conduct criminal activities in the United States.

(69) On or about February 19, 2010, defendant ARMANDO VILLAREAL HEREDIA tasked CI-3 with obtaining one van and two cars for "the team," that is, a kidnaping/murder crew operating in Tijuana, Mexico.

//
//

26

(70)    On or about February 22, 2010, defendants PERLA YADIRA FLORES, RAUL MORENO, JORGE HUMBERTO LORA and MARIO ESCAMILLA possessed marijuana.

(71)    On or about February 22, 2010, defendant MIKAEL DANIEL BLASER possessed an eighth of an ounce of cocaine, an AK-47 and a .38 caliber handgun.

(72)    On or about February 23, 2010, defendants MARIO ESCAMILLA, PERLA YADIRA FLORES and MIKAEL DANIEL BLASER attempted to murder A.E.Z.

(73)    On or about February 23, 2010, defendant MIKAEL DANIEL BLASER possessed a handgun for the purpose of murdering A.E.Z.

(74)    On or about February 25, 2010, at the direction of defendant ARMANDO VILLAREAL HEREDIA, defendant MARIO ESCAMILLA purchased law enforcement uniforms, boots, gloves, ski masks and plastic restraint devices, also known as "zip ties."

(75)    On or about February 26, 2010, defendant MARIO ESCAMILLA sold CI-1 a sixteenth of an ounce of cocaine for $140.

//
//
//
//
//
//
//
//

|    |      |                                                                  |
|----|------|------------------------------------------------------------------|
| 1  | (76) | On or about March 1, 2010, defendant MARIO                       |
| 2  |      | ESCAMILLA stated that because defendant RAUL                     |
| 3  |      | MORENO was too scared to participate in the                      |
| 4  |      | attempted murder of A.E.Z. on February 23, 2010,                 |
| 5  |      | defendant MARIO ESCAMILLA was considering sending                |
| 6  |      | defendant MARIO MORENO on an "errand" to Tijuana,                |
| 7  |      | Mexico, where defendant MARIO ESCAMILLA would                    |
| 8  |      | have his father, defendant IGNACIO ESCAMILLA                     |
| 9  |      | ESTRADA, kill defendant RAUL MORENO.                             |
| 10 | (77) | On or about March 1, 2010, defendant MARIO                       |
| 11 |      | ESCAMILLA tasked CI-1 with obtaining "paperwork,"                |
| 12 |      | that is, official law enforcement reports,                       |
| 13 |      | documenting the arrest of a juvenile female who                  |
| 14 |      | was caught attempting to body-cavity smuggle a                   |
| 15 |      | quarter-pound of methamphetamine into the United                 |
| 16 |      | States from Mexico via the San Ysidro Port of                    |
| 17 |      | Entry on February 12, 2010.                                      |
| 18 | (78) | On or about March 3, 2010, defendant MARIO                       |
| 19 |      | ESCAMILLA agreed to let defendant KEVIN LUIS                     |
| 20 |      | distribute narcotics on behalf of the Enterprise.               |
| 21 | (79) | On or about March 3, 2010, defendant MARIO                       |
| 22 |      | ESCAMILLA agreed to let defendant ARACELI VARELA                 |
| 23 |      | distribute narcotics on behalf of the Enterprise.               |
| 24 | //   |                                                                  |
| 25 | //   |                                                                  |
| 26 | //   |                                                                  |
| 27 | //   |                                                                  |
| 28 | //   |                                                                  |

28

(80)   On or about March 3, 2010, defendant MARIO ESCAMILLA instructed defendant FAUSTO ESCAMILLA ESTRADA to speak with "the Senor," that is, defendant Armando Villareal Heredia, regarding a pending order for three pounds of methamphetamine.

(81)   On or about March 4, 2010, defendant MARIO ESCAMILLA and defendant RAUL MORENO sold CI-1 an AK-47 assault rifle for $1,200.

(82)   On or about March 6, 2010, defendants JOSE ALFREDO NAJERA GIL and RUBEN DARIO CASTRO PEREZ tasked "Jose" with coordinating the murder of Efrain Alvarez Gonzalez and Abel Joatan Gonzalez in Tijuana, Mexico.

(83)   On or about March 8, 2010, defendant MARIO ESCAMILLA stated that he was going to collect a $10,000 drug debt owed to him by defendant JUAN CARLOS RIQUE AGUIRRE and that he would then kill Aguirre.

(84)   On or about March 8, 2010, defendant JOSE CONTRERAS provided defendant MARIO ESCAMILLA with two bullet proof vests and several thousand dollars.

(85)   On or about March 8, 2010, defendant JOSE CONTRERAS asked defendant MARIO ESCAMILLA to deliver several thousand dollars to defendant EDGAR ESCAMILLA in Tijuana, Mexico.

//

(86)    On or about March 8, 2010, defendant MARIO ESCAMILLA stated that defendant JOSE CONTRERAS was "on the same crew as Dies," that is, that defendant JOSE CONTRERAS worked for defendant EDGAR ESCAMILLA.

(87)    On or about March 9, 2010, defendants MARIO ESCAMILLA and ENRIQUE SALINAS JR. discussed a shipment of narcotics coming into the United States from Mexico.

(88)    On or about March 9, 2010, defendant KEVIN LUIS picked up approximately five pounds of marijuana from a "stash house" maintained by defendant MIKAEL DANIEL BLASER.

(89)    On or about March 11, 2010, defendants MARIO ESCAMILLA and BRIDGETTE REYNOSO agreed to assault a female in Santee, California, on behalf of "Tochas" because the female had "disrespected the Senores," that is, she failed to show appropriate deference to one or more of the Enterprise leaders in Tijuana, Mexico.

(90)    On or about March 12, 2010, defendants MARIO ESCAMILLA and ARACELI VARELA provided a sample of methamphetamine to two individuals at a location near Third Avenue and Naples Street in Chula Vista, California.

//

//

//

(91)   On or about March 12, 2010, defendants MARIO ESCAMILLA and IGNACIO ESCAMILLA ESTRADA agreed to supply defendant defendant KEVIN LUIS with an ounce of methamphetamine every week at a price of $775 per ounce, as long as Luis was willing to pick the methamphetamine up in Tijuana, Mexico.

(92)   On or about March 15, 2010, defendant JOSE ALFREDO NAJERA GIL recruited CI-3 to kidnap and collect a drug debt owed to the Enterprise by M.L.

(93)   On or about March 16, 2010, defendant ARMANDO VILLAREAL HEREDIA offered to sell CI-3 three pounds of methamphetamine at a price of $10,500 per pound.

(94)   On or about March 16, 2010, defendant ARMANDO VILLAREAL HEREDIA offered to sell CI-3 four AK-47 assault rifles at a price of $2,300 per gun and four "5-7s," also known as "cop killers," at a price of $1,700 per gun.

(95)   On or about March 16, 2010, defendant ARMANDO VILLAREAL HEREDIA agree to sell CI-3 tactical law enforcement uniforms at a price of $250 per uniform.

(96)   On or about March 16, 2010, defendant JOSE ALFREDO NAJERA GIL informed CI-3 that "Tito" (defendant HUMBERTO TORRES MENDOZA) would assist CI-3 with the kidnaping of M.L.

//

31

(97)    On or about March 16, 2010, defendant HUMBERTO TORRES MENDOZA informed CI-3 that M.L. lived in Van Nuys, California.

(98)    On or about March 16, 2010, defendant MARIO ESCAMILLA offered to sell an undercover law enforcement officer one pound of methamphetamine for $14,000.

(99)    On or about March 16, 2010, at the direction of defendants MARIO ESCAMILLA, IGNACIO ESCAMILLA ESTRADA, FAUSTO ESCAMILLA ESTRADA, MIKAEL DANIEL BLASER and JORGE HUMBERTO LORA, traveled from San Diego to Tijuana, Mexico, where defendant MIKAEL DANIEL BLASER carjacked a blue 2008 Ford Explorer.

(100)   On or about March 16, 2010, in Tijuana, Mexico, defendants MIKAEL DANIEL BLASER and JORGE HUMBERTO LOYA attempted to rob $50,000 from an individual making a cash deposit at a check cashing business.

(101)   On or about March 16, 2010, defendant MARIO ESCAMILLA assaulted M.R. in front of an apartment complex located at 1030 15th Street, Imperial Beach, California.

//
//
//
//
//

32

1    (102)    On or about March 16, 2010, defendant JOSE
2            ALFREDO NAJERA GIL told defendant JESUS QUINONES
3            MARQUEZ that he was going to get a new phone
4            number for Marquez's phone, but that despite that
5            change, Marquez would not lose his "agenda," that
6            is, his contact list.

7    (103)    On or about March 17, 2010, defendant HUMBERTO
8            TORRES MENDOZA provided CI-3 and a law
9            enforcement officer acting in an undercover
10           capacity with M.L.'s photograph and a residence
11           address.

12   (104)    On or about March 17, 2010, defendants MARIO
13           ESCAMILLA, PERLA YADIRA FLORES and JORGE HUMBERTO
14           LORA possessed approximately one pound of
15           methamphetamine.

16   (105)    On or about March 18, 2010, defendant JORGE
17           HUMBERTO LORA sold CI-1 an SKS assault rifle with
18           an obliterated serial number for $1,000.

19   (106)    On or about March 17, 2010, defendant JESUS
20           QUINONES MARQUEZ provided defendant JOSE ALFREDO
21           NAJERA GIL with information about a triple
22           homicide which occurred in "Las Brisas," a
23           neighborhood in Tijuana, Mexico.

24   //
25   //
26   //
27   //
28   //

33

(107)    On or about March 18, 2010, defendants MARIO ESCAMILLA, MIKAEL DANIEL BLASER and TELLIE KRESCHMER possessed approximately 23 ounces of methamphetamine (635 grams of actual methamphetamine), approximately 30 pounds of marijuana and a stolen shotgun.

(108)    On or about March 19, 2010, defendants MARIO ESCAMILLA and JORGE HUMBERTO LORA sold CI-1 an FEG model PJK-9 HP 9 mm handgun and a IAI semi-automatic .380 caliber handgun for $700.

(109)    On or about March 23, 2010, defendant CARLOS COSME agreed to sell CI-3 two AR-15 assault rifles at a price of between $1,500 to $2,000 for each gun.

(110)    On or about March 23, 2010, defendant JESUS QUINONEZ MARQUEZ informed defendant JOSE ALFREDO NAJERA GIL that he (MARQUEZ) was "waiting for things to get better" so that NAJERA could buy him (MARQUEZ) the apartment, to which NAJERA responded that there would be "more money," "things would get better," and that MARQUEZ should "not worry."

(111)    On or about March 24, 2010, defendant ARMANDO VILLAREAL HEREDIA brokered the sale of an AR-15 assault rifle and a "5-7," also known as a "cop killer," to CI-3 and a law enforcement officer acting in an undercover capacity.

//

34

(112)   On or about March 24, 2010, defendant MARIO ESCAMILLA sold CI-1 a pound of methamphetamine (380 grams of actual methamphetamine) for $14,000.

(113)   On or about March 25, 2010, "Panchito" informed defendant JOSE ALFREDO NAJERA GIL that he was "in the fucking car and his eyes were not moving from the fucking house so they (defendants EFRAIN ALVAREZ GONZALEZ and ABEL JOATAN GONZALEZ) would not be able to get by without being seen."

(114)   On or about March 25, 2010, "Panchito" informed defendant JOSE ALFREDO NAJERA GIL that they (EFRAIN ALVAREZ GONZALEZ and ABEL JOATAN GONZALEZ) had left the house in a "Silverado" with "California plates" and that they were heading up to the "El Florido" neighborhood in Tijuana, Mexico.

(115)   On or about March 25, 2010, defendant JOSE ALFREDO NAJERA GIL informed defendant RUBEN DARIO CASTRO PEREZ that he had "given the order" to have EFRAIN ALVAREZ GONZALEZ and ABEL JOATAN GONZALEZ murdered when they were "on their way to El Florido."

//
//
//
//
//

35

1   (116)   On or about March 25, 2010, at the direction of
2           defendants JOSE ALFREDO NAJERA GIL and RUBEN
3           DARIO CASTRO PEREZ, "Panchito" and other
4           unidentified individuals shot and killed Efrain
5           Alvarez Gonzalez and Abel Joatan Gonzalez in the
6           El Florido neighborhood of Tijuana, Mexico.
7   (117)   On or about March 25, 2010, defendant JOSE
8           ALFREDO NAJERA GIL informed defendant RUBEN DARIO
9           CASTRO PEREZ that "the vehicle was crashed" and
10          that "they sat both of them," that is, that both
11          Efrain Alvarez Gonzalez and Abel Joatan Gonzalez
12          had been murdered.
13  (118)   On or about March 25, 2010, defendant JOSE
14          ALFREDO NAJERA GIL informed defendant OSCAR
15          DANIEL MONTOYA MORA that Efrain Alvarez Gonzalez
16          and Abel Joatan Gonzalez had been successfully
17          murdered, to which Montoya responded, "That's
18          good."
19  (119)   On or about March 25, 2010, defendant RUBEN DARIO
20          CASTRO PEREZ instructed defendant JOSE ALFREDO
21          NAJERA GIL to have the men "pick up Reyna," that
22          is, to kidnap Efrain Alvarez Gonzalez's mother,
23          R.G.
24  //
25  //
26  //
27  //
28  //

36

(120)   On or about March 25, 2010, defendant RUBEN DARIO CASTRO PEREZ instructed defendant JOSE ALFREDO NAJERA GIL to contact defendant JESUS QUINONES MARQUEZ and have MARQUEZ "spread the rumor and make a mess of things, just as if 'they' (Efrain Alvarez Gonzalez and Abel Joatan Gonzalez) were bad guys."

(121)   On or about March 25, 2010, "Panchito" informed defendant JOSE ALFREDO NAJERA GIL that "it was confirmed, they both got taken down," that is, that both Efrain Alvarez Gonzalez and Abel Joatan Gonzalez had been murdered.

(122)   On or about March 25, 2010, defendant Oscar Daniel Montoya Mora informed defendant JOSE ALFREDO NAJERA GIL that he would make a $5,000 payment to the individuals who participated in the murder of Efrain Alvarez Gonzalez and Abel Joatan Gonzalez.

(123)   On or about March 25, 2010, "Gabby" used a .38 caliber handgun to shoot and kill Marisol Fuerte Aguinon at a location near Parque Morelos in Tijuana, Mexico.

(124)   On or about March 25, 2010, defendant JORGE ALBERTO RAMIREZ PONCE informed defendant Jose ALFREDO NAJERA GIL that "the lady" (Marisol Fuerte Aguinon) had been located and "they cashed her check," that is, Aguinon had been killed.

//

(125)   On or about March 25, 2010, Mario LNU instructed CI-3 to kill M.L. if M.L. refused to pay the debt he owed to the Enterprise.

(126)   On or about March 27, 2010, defendant JESUS QUINONES MARQUEZ informed defendant JOSE ALFREDO NAJERA GIL that he (MARQUEZ) had been tasked by defendant RUBEN DARIO CASTRO PEREZ with making the murders of Efrain Alvarez Gonzalez and Abel Joatan Gonzalez appear to have been committed by members of a rival organization.

(127)   On or about March 27, 2010, defendant JOSE ALFREDO NAJERA GIL informed defendant JESUS QUINONES MARQUEZ that he would check with defendant RUBEN DARIO CASTRO PEREZ and confirm that there would be "motivation," that is, a cash payment, if Marquez made the murders of Efrain Alvarez Gonzalez and Abel Joatan Gonzalez appear to have been committed by members of a rival organization.

(128)   On or about March 31, 2010, at the direction of defendant JOSE ALFREDO NAJERA GIL, and with the assistance of Mario LNU and defendant HUMBERTO TORRES MENDOZA, CI-3 and a team of undercover law enforcement officers conducted a "staged" kidnaping of M.L.

//

//

//

(129)    On or about March 31, 2010, defendant JOSE ALFREDO NAJERA GIL informed defendant JORGE ALBERTO RAMIREZ PONCE that M.L. had been kidnaped and that PONCE needed to "take care of that matter quick," to which PONCE responded, "a vacation would be fine," that is, killing M.L. was an option.

(130)    On or about April 2, 2010, defendant JORGE HUMBERTO LORA stated that he had recently transported 839 pounds of marijuana from San Diego to Los Angeles for defendant MARIO ESCAMILLA and that ESCAMILLA had paid him $2,000 for transporting the marijuana.

(131)    On or about April 2, 2010, defendant MARIO ESCAMILLA stated that he had taken a black Mitsubishi from "Mangera" as collateral for a $2,500 drug debt owed by "Mangera."

(132)    On or about April 6, 2010, defendant JORGE HUMBERTO LORA stated that defendant MARIO ESCAMILLA had used too much "cut," that is, a dilutant, on a quarter pound of methamphetamine that LORA had recently sold to a female who lived near the Sycuan Indian Reservation in San Diego.

(133)    On or about April 6, 2010, defendant MARIO ESCAMILLA stated that he was expecting to receive a 380 pound marijuana shipment.

//
//

(134) On or about April 7, 2010, defendant JOSE ALFREDO NAJERA GIL instructed CI-3 to take a $10,000 ransom payment from M.L.'s family.

(135) On or about April 14, 2010, Grecia Granados Brambilla (charged elsewhere) and Adriana Espinoza Vasquez (charged elsewhere) picked up a $10,000 "ransom payment" from CI-3 and a law enforcement officer acting in an undercover capacity.

(136) On or about April 15, 2010, at the direction of defendant JOSE ALFREDO NAJERA GIL, defendant OSCAR DANIEL MONTOYA MORA delivered a $4,000 payment to CI-3 and a law enforcement officer acting in an undercover capacity.

(137) On or about April 15, 2010, defendant MARIO ESCAMILLA sold CI-1 an SKS 7.62 mm rifle for $1,400.

(138) On or about April 15, 2010, defendant MARIO ESCAMILLA sold CI-1 an SKS 7.62 mm rifle for $1,000.

(139) On or about April 17, 2010, within the Central District of California, and at the direction of defendant ARMANDO VILLAREAL HEREDIA, two Hispanic males delivered a "5-7," also known as a "cop killer," to a law enforcement officer who was acting in an undercover capacity.

//
//

(140)   On or about April 19, 2010, defendant JOSE ALFREDO NAJERA GIL informed CI-3 that defendant OSCAR DANIEL MONTOYA MORA would introduce CI-3 to an unidentified male ("UM"), so that CI-3 and the UM could make arrangements to rob $100,000 from a check cashing business in National City, California.

(141)   On or about April 19, 2010, within the Central District of California, and at the direction of defendant ARMANDO VILLAREAL HEREDIA, an unidentified Hispanic male delivered an AR-15 assault rifle to a law enforcement officer who was acting in an undercover capacity.

(142)   On or ABOUT APRIL 20, 2010, defendants MARIO Escamilla and CHRISTOPHER ADRIAN RUIZ sold CI-1 a Colt AR-15 assault rifle for $1,500.

(143)   On or about April 23, 2010, defendant JOSE ALFREDO NAJERA GIL offered to sell CI-3 an unspecified quantity of methamphetamine at a price of $11,500 per pound.

(144)   On or about April 24, 2010, in Tijuana, Mexico, defendant JOSE ALEJANDRO FLORES MESA conducted surveillance of C.A.P.

(145)   On or about April 25, 2010, at the direction of defendant RUBEN DARIO CASTRO PEREZ, defendant JOSE ALFREDO NAJERA GIL, "Marcos," and several other unidentified individuals kidnaped C.A.P. in Tijuana, Mexico.

(146)   On or about April 25, 2010, defendant RUBEN DARIO CASTRO PEREZ instructed defendant JOSE ALFREDO NAJERA GIL to have the person interrogating C.A.P. ask the following questions: (1) What do you do for a living? (2) What group do you belong to? (3) Who is your boss? (4) Which kidnapings have you participated in?

(147)   On or about April 25, 2010, at the direction of defendant JOSE ALFREDO NAJERA GIL, "Marcos" interrogated C.A.P. about the location of other individuals employed by the drug trafficking organization controlled by Teodoro Garcia Simental, aka "El Teo" (charged elsewhere).

(148)   On or about April 25, 2010, defendant FAUSTO ESCAMILLA ESTRADA informed defendant MARIO ESCAMILLA that defendant ARMANDO VILLAREAL HEREDIA had ordered the murder of an individual in San Diego and that defendant FAUSTO ESCAMILLA ESTRADA would be sending someone to meet with defendant MARIO ESCAMILLA the next day to give defendant MARIO ESCAMILLA "the coordinates of the big mouth," that is, the location of the intended victim.

//
//
//
//
//

42

1          (149)    On or about April 25, 2010, defendant IVAN CANDELARIO MAGANA HEREDIA told defendant CARLOS COSME that Bladimir Castro Ochoa (charged elsewhere), who defendant CANDELARIO MAGANA HEREDIA referred to as "one of my guys," had been arrested.

(150)    On or about April 25, 2010, defendant IVAN CANDELARIO MAGANA HEREDIA tasked defendant CARLOS COSME with making the necessary arrangements, including making bribe payments, to have Bladimir Castro Ochoa (charged elsewhere) released from custody in Mexico.

(151)    On or about April 26, 2010, defendant MARIO ESCAMILLA informed defendant FAUSTO ESCAMILLA ESTRADA that defendants MARIO ESCAMILLA, JORGE HUMBERTO LORA and "Luis" had attempted to locate and kill an unidentified individual in San Diego, California.

(152)    On or about April 27, 2010, at the direction of defendant JOSE ALFREDO NAJERA GIL, defendant OSCAR DANIEL MONTOYA MORA delivered a sample of methamphetamine (0.41 grams of actual methamphetamine) to CI-3 and a law enforcement officer acting in an undercover capacity.

//
//
//
//

43

(153)   On or about April 27, 2010, defendant OSCAR DANIEL MONTOYA MORA informed CI-3 that he was making arrangements to rob a liquor store, which doubled as a check cashing business, located in National City, California, and that the robbery would be assisted by two employees at the store.

(154)   On or about April 28, 2010, at the direction of defendant JOSE ALFREDO NAJERA GIL, defendant OSCAR DANIEL MONTOYA MORA sold a half-pound of methamphetamine (228 grams of actual methamphetamine) to CI-3 and a law enforcement officer acting in an undercover capacity for $5,700.

(155)   On or about April 28, 2010, defendant EDGAR GUSTAVO ESCAMILLA directed defendant JORGE HUMBERTO LORA and CI-1 to collect money from defendant Christopher Adrian Ruiz and "Ricky."

(156)   On or about April 28, 2010, defendant JOSE ANTONIO ORTEGA NUNO agreed to operate and supervise a "hit squad" in Tijuana, Mexico, operating under the direction of defendant CARLOS COSME.

//
//
//
//
//
//

1   (157)   On or about April 28, 2010, defendant EDGAR
2           GUSTAVO ESCAMILLA offered to "front" CI-1 a one
3           ounce sample of methamphetamine and stated that
4           if CI-1's customers liked the quality of the
5           methamphetamine, defendant EDGAR GUSTAVO
6           ESCAMILLA would supply CI-1 with additional
7           quantities by having four females body-cavity
8           smuggle the methamphetamine into the United
9           States from Mexico.

10  (158)   On or about April 28, 2010, defendant EDGAR
11          GUSTAVO ESCAMILLA stated that he would look into
12          obtaining at least one handgun for CI-1 to use
13          against any person who "acted stupid" so CI-1
14          could make that person "sit down," that is, so
15          CI-1 could kill that person.

16  (159)   On or about April 29, 2010, defendant RUBEN DARIO
17          CASTRO PEREZ told defendant JOSE ALFREDO NAJERA
18          GIL that he wanted defendant JOSE ALFREDO NAJERA
19          to make a "movie," that is, a video-taped
20          execution, that included "intelligence"
21          information, which CASTRO stated would be "bad
22          ass."

23  (160)   On or about April 29, 2010, defendant EDGAR
24          GUSTAVO ESCAMILLA instructed defendant
25          CHRISTOPHER ADRIAN RUIZ to sell methamphetamine
26          at a price of $6,400 per half-pound.

27  //
28  //

(161)   On or about May 3, 2010, defendant CARLOS COSME stated that he had moved Z.L.G.M., a law enforcement officer in Tijuana, several times and that it would be cheaper if FNU LNU, aka Eco, would kill Z.L.G.M.

(162)   On or about May 4, 2010, at the direction of defendants EDGAR GUSTAVO ESCAMILLA and JOSE CONTRERAS, an unidentified male sold CI-1 a 9mm Glock 26 handgun for $1,000.

(163)   On or about May 5, 2010, defendant CHRISTOPHER ADRIAN RUIZ possessed a scale, a bullet proof vest and a shotgun.

(164)   On or about May 6, 2010, at the direction of defendant JOSE ALFREDO NAJERA GIL, defendant OSCAR DANIEL MONTOYA MORA sold a half-pound of methamphetamine to CI-3 and a law enforcement officer acting in an undercover capacity for $5,800.

(165)   On or about May 6, 2010, at the direction of defendant JOSE ALFREDO NAJERA GIL, defendant OSCAR DANIEL MONTOYA MORA "fronted" a half-pound of methamphetamine to CI-3 and a law enforcement officer acting in an undercover capacity.

(166)   On or about May 8, 2010, defendant RUBEN DARIO CASTRO PEREZ instructed defendant JOSE ALFREDO NAJERA GIL to watch the video "ejecucion de fulano de tal trabajador de la barbie."

//

46

(167)    On or about May 11, 2010, defendants CHRISTOPHER ADRIAN RUIZ and RICHARD GILBERT FAVELA physically restrained and robbed M.G.

(168)    On or about May 12, 2010, defendant EDGAR GUSTAVO ESCAMILLA instructed CI-1 to obtain a vehicle and crash it into the vehicle of a potential witness against defendant MARIO ESCAMILLA so that the witness would not be able to drive to defendant MARIO ESCAMILLA'S court proceedings.

(169)    On or about May 12, 2010, at the direction of defendants JOSE ALFREDO NAJERA GIL and RUBEN DARIO CASTRO PEREZ, Cristian LNU, aka Elmer, placed a dead dog and a threatening message, stating that "the family is next," on the gravesite of Efrain Alvarez Gonzalez and Abel Joatan Gonzalez.

(170)    On or about May 13, 2010, defendant EDGAR GUSTAVO ESCAMILLA instructed CI-1 to collect money from an individual in National City and to send that money to defendant EDGAR ESCAMILLA so that defendant EDGAR ESCAMILLA could make a payment to the "Senores," that is the leadership of the Enterprise.

(171)    On or about May 13, 2010, defendant EDGAR GUSTAVO ESCAMILLA instructed defendant JORGE HUMBERO LORA and CI-1 to collect a $1,850 debt defendant CHRISTOPHER ADRIAN RUIZ owed to defendant EDGAR GUSTAVO ESCAMILLA.

|     |       |                                                                    |
|-----|-------|--------------------------------------------------------------------|
| 1   | (172) | On or about May 13, 2010, defendant CHRISTOPHER                    |
| 2   |       | ADRIAN RUIZ sold CI-1 a .300 caliber Savage rifle                  |
| 3   |       | and a bolt-action 22-250 caliber rifle for $700.                   |
| 4   | (173) | On or about May 13, 2010, defendant JENNIFER                       |
| 5   |       | ESCAMILLA transported $2,900 from San Diego to                     |
| 6   |       | Tijuana, Mexico.                                                    |
| 7   | (174) | On or about May 13, 2010, at the direction of                      |
| 8   |       | defendant EDGAR GUSTAVO ESCAMILLA, defendant                       |
| 9   |       | ROCIO LOPEZ "fronted" a half-pound of                              |
| 10  |       | methamphetamine to CI-1.                                           |
| 11  | (175) | On or about May 13, 2010, defendant EDGAR LOPEZ                    |
| 12  |       | DE-ANDA DAHER agreed, on behalf of defendant                       |
| 13  |       | RUBEN DARIO CASTRO PEREZ, to use his law                           |
| 14  |       | enforcement contacts to secure the release of two                 |
| 15  |       | drug couriers who had been arrested in Mexico.                    |
| 16  | (176) | On or about May 14, 2010, defendants EDGAR LOPEZ                  |
| 17  |       | DE-ANDA DAHER and RUBEN DARIO CASTRO PEREZ                         |
| 18  |       | discussed a $100,000 payment owed to CASTRO by                    |
| 19  |       | "Yahaira."                                                         |
| 20  | (177) | On or about May 15, 2010, defendant RUBEN DARIO                  |
| 21  |       | CASTRO PEREZ instructed defendant EDGAR LOPEZ                     |
| 22  |       | DE-ANDA DAHER to call the "prosecutor" because                    |
| 23  |       | the military had arrested an individual who                       |
| 24  |       | operated "the ranch" for Castro.                                  |
| 25  | (178) | On or about May 18, 2010, at the direction of                     |
| 26  |       | defendant JOSE ALFREDO NAJERA GIL, defendant                      |
| 27  |       | OSCAR DANIEL MONTOYA MORA traveled from Tijuana,                  |
| 28  |       | Mexico, to San Diego.                                             |

(179)   On or about May 18, 2010, defendant OSCAR DANIEL MONTOYA picked up $5750 from CI-1 and then transported that money from San Diego, California, to Tijuana, Mexico.

(180)   On or about May 18, 2010, defendant OMAR MORA directed a law enforcement officer acting in an undercover capacity and CI-3 to the residence of J.C. in National City, California.

(181)   On or about May 18, 2010, defendant JOSE ALFREDO NAJERA GIL instructed CI-3 to go forward with the kidnaping of J.C. because the kidnaping would generate anywhere from $500,000 to $1,000,000.

(182)   On or about May 18, 2010, at the direction of defendants EDGAR GUSTAVO ESCAMILLA and IGNACIO ESCAMILLA ESTRADA, defendant JENNIFER ESCAMILLA transported $6,500 from San Diego to Tijuana, Mexico.

(183)   On or about May 18, 2010, defendant JORGE HUMBERTO LORA sold a "cs" grenade, a Mossberg shotgun and .22 caliber handgun to CI-1 for $750.

(184)   On or about May 18, 2010, defendant JOSE ANTONIO ORTEGA NUNO agreed to provide defendant CARLOS COSME with a photographic roster of current Baja California State Police Officers in exchange for a $1,000 payment.

//

//

//

49

(185)   On or about May 18, 2010, in Tijuana, Mexico, and at the direction defendants JOSE ALFREDO NAJERA GIL and RUBEN DARIO CASTRO PEREZ, Cristian LNU, aka Elmer, removed the headstone from the gravesite of Efrain Alvarez Gonzalez and Abel Joatan Gonzalez.

(186)   On or about May 18, 2010, in Tijuana, Mexico, and at the direction defendants JOSE ALFREDO NAJERA GIL and RUBEN DARIO CASTRO PEREZ, Cristian LNU, aka Elmer, transported the headstone from the gravesite of Efrain Alvarez Gonzalez and Abel Joatan Gonzalez to the residence of D.A., where he left the headstone and a threatening message in front of the entryway to the home.

(187)   On or about May 18, 2010, defendant RUBEN DARIO CASTRO PEREZ told defendant JOSE ALFREDO NAJERA GIL that he was going to make the family members of Efrain Alvarez Gonzalez and Abel Joatan Gonzalez suffer and move out of their home.

(188)   On or about May 18, 2010, defendant Ruben DARIO CASTRO PEREZ told defendant JOSE ALFREDO NAJERA GIL that if the family members of Efrain Alvarez Gonzalez and Abel Joatan Gonzalez did not move out of their house, he was going to kill them.

(189)   On or about May 20, 2010, at the direction of defendant EDGAR GUSTAVO ESCAMILLA, defendant ROCIO LOPEZ sold a half-pound of methamphetamine to CI-1 for $6,500.

(190)   On or about May 20, 2010, at the direction of defendant IVAN CANDELARIO MAGANA HEREDIA, one or more individuals shot J.L.Q.C., believing J.L.Q.C. to be F.B., a high-ranking Mexican law enforcement official.

(191)   On or about May 27, 2010, defendant CARLOS COSME agreed to sell CI-3 a photographic roster of current Baja California State Police Officers in exchange for a $500 payment.

(192)   On or about May 28, 2010, defendant CARLOS COSME sold CI-3 a photographic roster of current Baja California State Police Officers in exchange for a $500 payment.

(193)   On or about May 28, 2010, defendant OMAR MORA and other individuals attempted to locate and kidnap J.C. in National City, California.

(194)   On or about May 28, 2010, defendant CHRISTOPHER ADRIAN RUIZ told defendant EDGAR GUSTAVO ESCAMILLA that he was going to shoot "Mark" in the kneecaps and put him in the hospital instead of killing him because Ruiz still hoped to collect the money that "Mark" owed.

(195)   On or about June 1, 2010, defendant IVAN CANDELARIO MAGANA HEREDIA ordered the murder of Antonio Rodriguez Soltero, aka Piratita.

//
//
//

1        (196)     On or about June 1, 2010, defendants ARMANDO VILLAREAL HEREDIA, IVAN CANDELARIO MAGANA HEREDIA and CARLOS COSME made arrangements to steal fifty pounds of methamphetamine, which was being transported from the interior of Mexico to Tijuana via a commercial bus line.

7        (197)     On or about June 2, 2010, defendant OSCAR DANIEL MONTOYA Mora informed defendant EDGAR LOPEZ DE-ANDA DAHER that defendant JOSE ALFREDO NAJERA GIL was in control of "the money coming in" because defendant RUBEN DARIO CASTRO PEREZ had been arrested.

13       (198)     On or about June 3, 2010, defendant IVAN CANDELARIO MAGANA HEREDIA recruited defendant ULISES VALENZUELA to murder M.S. in San Diego, California.

17       (199)     On or about June 3, 2010, defendant CHRISTOPHER ADRIAN RUIZ possessed a sawed-off shotgun and shotgun ammunition.

20       (200)     On or about June 3, 2010, defendant JUAN CARLOS MAGANA HEREDIA informed defendant IVAN CANDELARIO MAGANA HEREDIA that he was going to make Andrew Martinez (charged elsewhere) deliver approximately 15 pounds of cocaine from San Diego to Los Angeles.

26  //

27  //

28  //

(201)   On or about June 3, 2010, defendant IVAN CANDELARIO MAGANA HEREDIA stated that he would "cash the check" of Andrew Martinez (charged elsewhere), that is, kill Martinez, after Martinez delivered approximately 15 pounds of cocaine to Los Angeles.

(202)   On or about June 4, 2010, defendants IVAN CANDELARIO MAGANA HEREDIA and JUAN CARLOS MAGANA HEREDIA possessed approximately 15 pounds of cocaine.

(203)   On or about June 6, 2010, defendant JOSE ALFREDO NAJERA GIL asked defendant JESUS QUINONES MARQUEZ to "help out" with the situation involving "Gabby," who Najera stated was being targeted by Mexican law enforcement officers investigating the murder of Marisol Fuerte Aguinon on March 25, 2010, in Tijuana, Mexico.

(204)   On or about June 7, 2010, defendants JOSE ALEJANDRO FLORES MEZA, JORGE ALBERTO RAMIREZ PONCE and Humberto LNU made arrangements to conduct surveillance in support of their efforts to kidnap A.M. in Tijuana, Mexico.

(205)   On or about June 15, 2010, defendant OSCAR DANIEL MONTOYA MORA transported approximately $105,000 from defendant Alicia Martinez's residence in San Diego to Tijuana, Mexico.

//
//

1        (206)     On or about June 15, 2010, defendant ALICIA

2                   MARTINEZ possessed $81,000.

3        (207)     On or about June 21, 2010, defendant JUAN CARLOS

4                   MAGANA caused $285,620 to be transported from San

5                   Diego to defendant IVAN CANDELARIO MAGANA HEREDIA

6                   in Tijuana, Mexico.

7 All in violation of Title 18, United States Code, Section 1962(d).

8                  **FORFEITURE ALLEGATION**

9     9.    All of the allegations contained in Count 1 of this

10 Indictment are hereby realleged and incorporated by reference herein

11 as though fully set forth for the purpose of alleging forfeiture

12 pursuant to the provisions of Title 18, United States Code,

13 Section 1963.  Pursuant to Federal Rules of Criminal Procedure,

14 Rule 32.2, notice is hereby given to the above-named defendants that

15 the United States will seek forfeiture as part of any sentence in

16 accordance with Title 18, United States Code, Section 1963, in the

17 event of ay defendant's conviction under Count One of this Indictment.

18     a. Defendants ARMANDO VILLAREAL HEREDIA, aka Gordo,

19 aka Gordo Villareal, RUBEN DARIO CASTRO PEREZ, aka Compadre,

20 aka Choques, IVAN CANDELARIO MAGANA HEREDIA, aka Soldado, JOSE ALFREDO

21 NAJERA GIL, CARLOS COSME, MARIO ESCAMILLA, aka Unico, IGNACIO

22 ESCAMILLA ESTRADA, aka Uno, aka Senor, FAUSTO ESCAMILLA ESTRADA,

23 aka Taliban, EDGAR GUSTAVO ESCAMILLA, aka Dies, JESUS QUINONES

24 MARQUEZ, aka Rinon, JOSE ANTONIO ORTEGA NUNO, EDGAR LOPEZ DE-ANDA

25 DAHER, aka Pollito, JOSE ALEJANDRO FLORES MEZA, aka Shakira, ALICIA

26 MARTINEZ, aka Comadre, JUAN CARLOS MAGANA HEREDIA, OSCAR DANIEL

27 MONTOYA MORA, JORGE ALBERTO RAMIREZ PONCE, aka Betote, MIKAEL DANIEL

28 BLASER, aka Troubles, JONATHAN VALLE, aka Reaper, ARMANDO CASTILLO,

1   aka Choco, OMAR MARTINEZ, aka Nino, ENRIQUE SALINAS, JR., aka Playboy,

2   RAUL MORENO, aka Flaco, MIGUEL SORIA, aka Mikey, PERLA YADIRA FLORES,

3   aka P, LUZ MARIA BENAVIDEZ MARTINEZ, aka Araceli, BRIDGETTE REYNOSO,

4   aka B, JORGE HUMBERTO LORA, aka Georgie, CHRISTOPHER ADRIAN RUIZ,

5   aka Sneaky, RICHARD GILBERT FAVELA, aka Tiny, HUMBERTO TORRES MENDOZA,

6   aka Tito, JUAN CARLOS RIQUE AGUIRRE, aka JC, TELLIE KRESCHMER, HECTOR

7   MONTES, aka Toxic, aka Little Spikey, JOSE CONTRERAS, aka Pepe,

8   aka Dandi, HASSAIN ALZUBAIDY, aka Arab, OMAR MORA, ULISES VALENZUELA,

9   BENJAMIN AVENDANO, aka Peso, JENNIFER ESCAMILLA, ARACELI VARELA,

10   aka Uvia, ROCIO LOPEZ, KEVIN LUIS, aka Listo have acquired and

11   maintained interests in violation of Title 18, United States Code,

12   Section 1962, which interests are subject to forfeiture to the United

13   States pursuant to Title 18, United States Code, Section 1963(a)(1);

14   and

15         b.  Defendants ARMANDO VILLAREAL HEREDIA, aka Gordo,

16   aka Gordo Villareal, RUBEN DARIO CASTRO PEREZ, aka Compadre,

17   aka Choques, IVAN CANDELARIO MAGANA HEREDIA, aka Soldado, JOSE ALFREDO

18   NAJERA GIL, CARLOS COSME, MARIO ESCAMILLA, aka Unico, IGNACIO

19   ESCAMILLA ESTRADA, aka Uno, aka Senor, FAUSTO ESCAMILLA, aka Taliban,

20   EDGAR GUSTAVO ESCAMILLA, aka Dies, JESUS QUINONES MARQUEZ, aka Rinon,

21   JOSE ANTONIO ORTEGA NUNO, EDGAR LOPEZ DE-ANDA DAHER, aka Pollito, JOSE

22   ALEJANDRO FLORES MEZA, aka Shakira, ALICIA MARTINEZ, aka Comadre, JUAN

23   CARLOS MAGANA HEREDIA, OSCAR DANIEL MONTOYA MORA, JORGE ALBERTO

24   RAMIREZ PONCE, aka Betote, MIKAEL DANIEL BLASER, aka Troubles,

25   JONATHAN VALLE, aka Reaper, ARMANDO CASTILLO, aka Choco, OMAR

26   MARTINEZ, aka Nino, ENRIQUE SALINAS, JR., aka Playboy, RAUL MORENO,

27   aka Flaco, MIGUEL SORIA, aka Mikey, PERLA YADIRA FLORES, aka P, LUZ

28   MARIA BENAVIDEZ MARTINEZ, aka Araceli, BRIDGETTE REYNOSO, aka B, JORGE

1  HUMBERTO LORA, aka Georgie, CHRISTOPHER ADRIAN RUIZ, aka Sneaky,

2  RICHARD GILBERT FAVELA, aka Tiny, HUMBERTO TORRES MENDOZA, aka Tito,

3  JUAN CARLOS RIQUE AGUIRRE, aka JC, TELLIE KRESCHMER, HECTOR MONTES,

4  aka Toxic, aka Little Spikey, JOSE CONTRERAS, aka Pepe, aka Dandi,

5  HASSAIN ALZUBAIDY, aka Arab, OMAR MORA, ULISES VALENZUELA, BENJAMIN

6  AVENDANO, aka Peso, JENNIFER ESCAMILLA, ARACELI VARELA, aka Uvia,

7  ROCIO LOPEZ, KEVIN LUIS, aka Listo have an interest in, security of,

8  claims against, and property and contractual rights which afford a

9  source of influence over, the enterprise described herein which the

10 defendants established, operated, controlled, conducted, and

11 participated in the conduct of, in violation of Title 18, United

12 States Code, Section 1962, which interests, securities, claims, and

13 rights are subject to forfeiture to the United States pursuant to

14 Title 18, United States Code, Section 1963(a)(2); and

15          c.  Defendants ARMANDO VILLAREAL HEREDIA, aka Gordo,

16 aka Gordo Villareal, RUBEN DARIO CASTRO PEREZ, aka Compadre,

17 aka Choques, IVAN CANDELARIO MAGANA HEREDIA, aka Soldado, JOSE ALFREDO

18 NAJERA GIL, CARLOS COSME, MARIO ESCAMILLA, aka Unico, IGNACIO

19 ESCAMILLA ESTRADA, aka Uno, aka Senor, FAUSTO ESCAMILLA, aka Taliban,

20 EDGAR GUSTAVO ESCAMILLA, aka Dies, JESUS QUINONES MARQUEZ, aka Rinon,

21 JOSE ANTONIO ORTEGA NUNO, EDGAR LOPEZ DE-ANDA DAHER, aka Pollito, JOSE

22 ALEJANDRO FLORES MEZA, aka Shakira, ALICIA MARTINEZ, aka Comadre, JUAN

23 CARLOS MAGANA HEREDIA, OSCAR DANIEL MONTOYA MORA, JORGE ALBERTO

24 RAMIREZ PONCE, aka Betote, MIKAEL DANIEL BLASER, aka Troubles,

25 JONATHAN VALLE, aka Reaper, ARMANDO CASTILLO, aka Choco, OMAR

26 MARTINEZ, aka Nino, ENRIQUE SALINAS, JR., aka Playboy, RAUL MORENO,

27 aka Flaco, MIGUEL SORIA, aka Mikey, PERLA YADIRA FLORES, aka P, LUZ

28 MARIA BENAVIDEZ MARTINEZ, aka Araceli, BRIDGETTE REYNOSO, aka B, JORGE

HUMBERTO LORA, aka Georgie, CHRISTOPHER ADRIAN RUIZ, aka Sneaky, RICHARD GILBERT FAVELA, aka Tiny, HUMBERTO TORRES MENDOZA, aka Tito, JUAN CARLOS RIQUE AGUIRRE, aka JC, TELLIE KRESCHMER, HECTOR MONTES, aka Toxic, aka Little Spikey, JOSE CONTRERAS, aka Pepe, aka Dandi, HASSAIN ALZUBAIDY, aka Arab, OMAR MORA, ULISES VALENZUELA, BENJAMIN AVENDANO, aka Peso, JENNIFER ESCAMILLA, ARACELI VARELA, aka Uvia, ROCIO LOPEZ, KEVIN LUIS, aka Listo have property constituting and derived from proceeds obtained, directly and indirectly, from the racketeering activity described in this Indictment, in violation of Title 18, United States Code, Section 1962, which property is subject to forfeiture to the United States pursuant to Title 18, United States Code, Section 1963(a)(3).

10.    The interests of the defendants subject to forfeiture to the United States pursuant to Title 18, United States Code, Sections 1963(a)(1), (a)(2) and (a)(3), include but are not limited to all interests and proceeds traceable thereto, including approximately $10,000,000.00.

11.    Each of the defendants are jointly and severally liable for the forfeiture obligations alleged above.

12.    If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

      a.    cannot be located upon the exercise of due diligence;

      b.    has been transferred or sold to, or deposited with, a third person;

      c.    has been placed beyond the jurisdiction of the Court;

      d.    has been substantially diminished in value; or

      e.    has been commingled with other property which cannot be subdivided without difficulty;

1  it is the intent of the United States, pursuant to Title 18, United

2  States Code, Section 1963(m), to seek forfeiture of any other property

3  of said defendants up to the value of the above forfeitable property.

4  All pursuant to Title 18, United States Code, Section 1963.

5      DATED: July 29, 2010.

6                                    A TRUE BILL:

7

8                                    Foreperson

9

10 LAURA E. DUFFY
   United States Attorney

11

12 By:

13     TODD W. ROBINSON
       Assistant U.S. Attorney

14

15 By:

16     JAMES P. MELENDRES
       Assistant U.S. Attorneys

17

18

19

20

21

22

23

24

25

26

27

28