# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | CASE NO. 10CR3044 WQH |
|---|---|
| Plaintiff, | ORDER |
| vs. | |
| CARLOS COSME (5), | |
| Defendant. | |

Hayes, Judge:

The matter before the Court is the motion to withdraw his guilty plea filed by the Defendant Carlos Cosme. (ECF No. 1906)[1].

## BACKGROUND FACTS

On July 22, 2010, Defendant Carlos Cosme was arrested pursuant to a Complaint filed in this case.

On July 23, 2010, Defendant appeared before a Magistrate Judge and Donald Levine was appointed to represent the Defendant.

On July 29, 2010, the federal grand jury returned a one-count indictment charging Defendant Cosme and forty-two other defendants with conspiring to conduct enterprise affairs through a pattern of racketeering activity, in violation of 18 U.S.C. § 1962(d). The indictment alleged that the defendants and "others known and unknown to the grand jury, were members and associates of an organization known as the

---

[1] ECF No. 1868 was withdrawn at the motion hearing by counsel for the Defendant.

'Fernando Sanchez Organization' ('FSO'), whose members engaged in, among other things, murder, conspiracy to commit murder, attempted murder, kidnaping, conspiracy to kidnap, attempted kidnaping, robbery, conspiracy to commit robbery, attempted robbery, importation of controlled substances into the United States from Mexico, conspiracy to import controlled substances into the United States from Mexico, distribution of controlled substances, conspiracy to distribute controlled substances, money laundering and conspiracy to launder money." (ECF No. 82 at 3-4).

On September 30, 2010, the Court granted the Defendant Cosme's motion to declare the case complex finding that:

> The investigation which led to the RICO conspiracy charge in this case involved law enforcement officers from several jurisdictions and the court-authorized interception of over forty-five telephone facilities over a five month period, which resulted in the interception of over 20,000 conversations. To date, the Government has produced in discovery approximately 103,000 pages of documentary material (both written and images) and over two hundred compact disks. The compact disks contain video footage of various events alleged in the indictment and over 30,000 intercepted telephone calls, most of which are in the Spanish language.

(ECF No. 315 at 3).

On February 4, 2011, the Court set a schedule for wiretap motion, substantive motions and a trial date for all defendants of February 7, 2012.

On April 28, 2011, the grand jury returned a two-count superseding indictment. The superseding indictment charged the forty-three defendants, including Defendant Cosme, in Count 1 with conspiring to conduct enterprise affairs through a pattern of racketeering activity, in violation of 18 U.S.C. § 1962(d) as charged in the original indictment. The superseding indictment charged defendants, including Defendant Cosme, in Count 2 with conspiring to distribute cocaine, marijuana and methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(ii), 841(b)(1)(A)(vii), 841(b)(1)(A)(viii) and 846.

On May 31, 2011, Defendant Cosme and other defendants filed motions to suppress wiretap evidence.

On August 24, 2011, the Court issued an order denying the motions to suppress

wiretap evidence.

On August 29, 2011, Defendant Cosme and other defendants filed substantive motions.

On November 2, 2011, the Court issued an order ruling on the substantive motions.

On December 22, 2011, the grand jury issued a two-count second superseding indictment. The second superseding indictment charged the Defendant Cosme and others defendants in Count 1 with conspiring to conduct enterprise affairs through a pattern of racketeering activity, in violation of 18 U.S.C. § 1962(d) as charged in the original indictment. The second superseding indictment charged the Defendant Cosme and other defendants in Count 2 with conspiring to distribute cocaine, marijuana and methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(ii), 841(b)(1)(A)(vii), 841(b)(1)(A)(viii) and 846.

On January 5, 2012, Defendant Cosme filed a motion to continue the trial date set for February 7, 2012. The Court denied the motion to continue the trial date.

On February 1, 2012, the Court granted a renewed motion to continue the trial date filed by Defendant Cosme. The Court reset the trial at the request of Defendant Cosme for June 5, 2012.

On May 21, 2012, Defendant Cosme signed a Plea Agreement. In the Plea Agreement, Defendant agreed to plead guilty to Counts 1 and 2 of the Second Superseding Indictment and the parties agreed to jointly recommend that the Court impose a sentence of 235 months. Defendant initialed each page of the Plea Agreement and signed the Plea Agreement on the last page along with his counsel and counsel for the Government. Directly above the Defendant's signature, the Plea Agreement stated: "IN ADDITION TO THE FOREGOING PROVISIONS TO WHICH I AGREE, I SWEAR UNDER PENALTY OF PERJURY THAT THE FACTS IN THE 'FACTUAL BASIS' SECTION ARE TRUE." (ECF No. 1703 at 20).

In the plea agreement, Defendant stated that he understood the elements of the

offense and the penalties of the crime to which he was pleading guilty. (ECF No. 1703 at 4). The FACTUAL BASIS of the Plea Agreement stated:

> Defendant has fully discussed the facts of this case with defense counsel. Defendant has committed each of the elements of the crime, and admits that there is a factual basis for this guilty plea. Defendant stipulates and agrees that the facts set forth in the numbered paragraphs below occurred. Defendant also stipulates and agrees that if this case were to proceed to trial, the Government could prove the following facts beyond a reasonable doubt by competent and admissible evidence:
>
> 1. Between the time period of November 2008 and July 22, 2010, defendant Carlos Cosme entered into an agreement with other individuals named in the above-noted charge to participate in the affairs of the Fernando Sanchez Organization (the "FSO"), an "association-in-fact" enterprise as defined in Title 18, United States Code, Section 1961(4). Defendant Carlos Cosme agreed that a member of the FSO would commit at least two racketeering acts.
>
> 2. During the time period noted above, members of the FSO engaged in a pattern of racketeering activity, to include the commission of the following crimes: murder; conspiracy to commit murder; attempted murder; kidnaping; conspiracy to kidnap; attempted kidnaping; robbery; conspiracy to commit robbery; attempted robbery; importation of controlled substances into the United States from Mexico; conspiracy to import controlled substances into the United States from Mexico; distribution of controlled substances; conspiracy to distribute controlled substances; money laundering; and conspiracy to launder money. The FSO's pattern of racketeering activity affected interstate and foreign commerce. During the time period relevant to this guilty plea, the FSO operated in the Southern District of California and elsewhere.
>
> 3. Pursuant to his agreement to participate in the affairs of the FSO, defendant Carlos Cosme was aware that the FSO's racketeering activities included the commission of the crimes specified above in the preceding paragraph, including the crimes of: (a) conspiracy to import and distribute over 50 grams (pure) of methamphetamine; and (b) conspiracy to commit murder.
>
> 4. The FSO constitutes an ongoing organization whose members function as a continuing unit for the common purpose of achieving the objectives of the FSO, which include: (a) enriching the members of the FSO through, among other things, the importation and distribution of illegal narcotics in the United States, committing robberies, the kidnaping of individuals in the United States and Mexico, and "taxing" individuals involved in criminal activities within the geographical areas controlled by the Enterprise, to include Tijuana, Mexico, and areas of San Diego, California; (b) keeping rival traffickers, potential informants, witnesses against the FSO, law enforcement, the media, and the public-at-large in fear of the FSO, and in fear of its members and associates through threats of violence and violence; (c) preserving, protecting and expanding the power of the FSO through the use of intimidation, violence, threats of violence, assaults and murders; (d) preserving the continuity of membership in the FSO by threatening members, associates and individuals with knowledge of the FSO's illegal activities wishing to leave the FSO with violence, assault and

murder; and (e) preserving the ongoing viability of the FSO by assaulting law enforcement officers attempting to arrest FSO members, bribing public officials to secure the release of arrested FSO members and making payments to public officials in order to gain access to confidential law enforcement information adverse to the interests of the FSO.

5. In furtherance of his agreement to participate in the affairs of the FSO, defendant Carlos Cosme committed numerous racketeering offenses, including: (a) conspiracy to import and distribute more than 50 grams (actual) of methamphetamine and (b) conspiracy to commit murder.

6. Given his personal participation in the affairs of the FSO, defendant Carlos Cosme knew that members of the FSO would, during the time frame of the above-noted conspiracy, import and distribute more than 50 grams of actual methamphetamine. Further, defendant Carlos Cosme personally performed numerous overt acts in furtherance of a conspiracy to commit murder, including the recruitment of codefendant Jose Ortega Nuno to run a "hit squad" on behalf of defendant Cosme.

7. In furtherance of his agreement to participate in the affairs of the FSO, during February 2010, defendant Cosme arranged to sell a confidential informant ("CI") 2 pounds of methamphetamine in Tijuana, Mexico. Defendant Cosme knew that the methamphetamine would thereafter be imported into the United States from Mexico. Once 1 3/4 pounds (1/4 pound was seized at the border by U.S. law enforcement officials) of methamphetamine (758 grams of actual methamphetamine) had been successfully imported into the United States, the CI paid defendant Cosme for the methamphetamine.

(ECF No. 1703 at 5-8). These factual admissions are contained on Pages 5, 6, 7 and 8 of the Plea Agreement. Defendant's initials appear at the bottom right of each page as follows: ("Def. Initials CC )".

On May 25, 2012, Defendant appeared before this district court judge for a change of plea to the second superseding indictment pursuant to a Plea Agreement. At the Rule 11 colloquy, Defendant, represented by counsel, acknowledged that he had been sworn under penalty of perjury and that he could be prosecuted for perjury if he failed to provide truthful answers in this proceedings. The Court stated:

> THE COURT: A plea agreement has been provided to me which appears to have your initials in the lower right-hand corner of the agreement, and it appears to be signed by you. Did you, in fact, initial each page of the agreement and sign your name on the last page of the agreement or print your name?
> DEFENDANT: Yes, Your Honor.
> THE COURT: The agreement also includes a forfeiture addendum. Did you, in fact, review each page of that agreement with your counsel, and did you print your name on the last page of that agreement as well, sir?
> THE DEFENDANT: Yes, Your Honor.
> THE COURT: Have you had an opportunity to review the agreement,

> both the agreements, the plea agreement -- when I refer to the "plea agreement," I am referring to both, the agreement that discusses the criminal conduct as well as the forfeiture agreement. Do you understand?
> THE DEFENDANT: Yes, Your Honor.
> THE COURT: Have you had an opportunity to review those agreements paragraph by paragraph and line by line with your counsel?
> THE DEFENDANT: Yes, Your Honor.
> THE COURT: At the time you reviewed the agreements were they translated to you in the Spanish language?
> THE DEFENDANT: Yes, Your Honor.
> THE COURT: Do you have any questions about any of the terms of the agreement?
> THE DEFENDANT: No, Your Honor.
> THE COURT: Have you had sufficient time to discuss your case and to discuss the agreement with your counsel?
> THE DEFENDANT: Yes, I have had enough time. Yes, Your Honor.
> THE COURT: Are you satisfied with the services of your counsel?
> THE DEFENDANT: Yes, Your Honor.

(ECF No. 1913-1 at 25-27).

The Court advised the Defendant of his right to a speedy and public trial by a jury, appointment of counsel at all stages of the proceedings, his privileges against self-incrimination, and his right to remain silent. Defendant acknowledged his rights and privileges and stated that he wished to waive his rights for the purpose of pleading guilty to the charges set forth in the second superseding indictment. The Court reviewed the elements of the charge in Count One and the elements of the charge in Count Two. Defendant stated that he understood that by admitting – or pleading guilty to these offenses he will be admitting to each element of the offenses. The Court then reviewed each of the seven paragraphs of the factual basis for the plea contained in the Plea Agreement starting on page 5 of the plea agreement and continuing through page 8 of the plea agreement. The plea colloquy provided as follows:

> THE COURT: Do you also -- you agree, sir, that between the time period of November 2008 and July 22nd, 2010, that you entered into an agreement with other individuals named in the charge to participate in the affairs of the Fernando Sanchez Organization in association, in fact, enterprise as defined in Title 18 United States Code, Section 1961, Subsection 4?
> THE DEFENDANT: Yes, Your Honor.
> THE COURT: Do you agree that you agreed to become a member of the FSO and that you would commit at least two racketeering acts?
> THE DEFENDANT: Yes, Your Honor.
> THE COURT: Do you agree during that time period that members of the FSO, the Fernando Sanchez Organization, engaged in a pattern of racketeering activity to include the commission of the following crimes: murder, conspiracy to commit murder, attempted murder, kidnaping,

conspiracy to kidnap, attempted kidnaping, robbery, conspiracy to commit robbery, attempted robbery, importation of controlled substances into the United States from Mexico, conspiracy to import controlled substances into the United States from Mexico, distribution of controlled substances, conspiracy to distribute controlled substances, money laundering, and conspiracy to launder money?
THE DEFENDANT: Yes, Your Honor.
THE COURT: Do you also agree that the FSO's pattern of racketeering activity affected interstate and foreign commerce?
THE DEFENDANT: Yes, Your Honor.
THE COURT: Do you agree during the time period relevant to the plea that the FSO operated in the Southern District of California and elsewhere?
THE DEFENDANT: Yes, Your Honor.
THE COURT: Do you agree that pursuant to your agreement to participate in the affairs of the FSO you were aware of the FSO's racketeering activities, including the commission of the crimes specified above that I just referred to, including the crimes of conspiracy to import and distribute over 50 grams pure of methamphetamine and conspiracy to commit murder?
THE DEFENDANT: Yes, Your Honor.
THE COURT: Do you agree that the FSO constitutes an on-going organization whose members function as a continuing unit for the common purpose of achieving the objectives of the FSO which include enriching the members of the FSO through among other things the importation and distribution of illegal narcotics into the United States, committing robberies, the kidnaping of individuals in the United States and Mexico, taxing individuals involved in criminal activities within the geographical areas controlled by the enterprise to include Tijuana, Mexico, and areas of San Diego, California?
THE DEFENDANT: Yes, Your Honor.
THE COURT: It is also includes keeping rival drug traffickers, potential informants, witnesses against the FSO, law enforcement, the media and the public at large in fear of the FSO, in fear of its members and associates through threats of violence and harm?
THE DEFENDANT: Yes, Your Honor.
THE COURT: That includes preserving, protecting, and expanding the power of the FSO through the use of intimidation, violence, threats of violence, assaults and murders?
THE DEFENDANT: Yes, Your Honor. I understand.
THE COURT: Preserving the continuity of membership in the FSO by threatening members, associates, and individuals with knowledge of the FSO's illegal activities wishing to leave the FSO with violence, assault and murder, and preserving the on-going viability of the FSO, by assaulting law enforcement officers attempting to arrest FSO members, bribing public officials to secure the release of arrested FSO members, and making payments to public officials in order to gain access to confidential law enforcement information adverse to the interests of the FSO?
THE DEFENDANT: Yes, Your Honor. I understand.
THE COURT: And furtherance of this agreement to participate in the affairs of the FSO, did you -- do you agree that you committed numerous racketeering offenses including conspiracy to import and distribute more than 50 grams, actual, methamphetamine?
THE DEFENDANT: Yes, Your Honor.
THE COURT: And do you also agree that you committed the racketeering act of conspiracy to commit murder?

|||
|---|---|
|1| MR. LEVINE: Your Honor, he agrees that the Government could prove that.|
|2| THE COURT: Well, it says here in the agreement this is in furtherance of his agreement to participate in the affairs of the FSO, defendant Carlos Cosme committed numerous racketeering acts, including conspiracy to import and distribute more than 50 grams, actual, methamphetamine; and B, conspiracy to commit murder. Do you agree, sir, that is what you did?|

MR. LEVINE:  Your Honor, he agrees that the Government could prove that.

THE COURT:  Well, it says here in the agreement this is in furtherance of his agreement to participate in the affairs of the FSO, defendant Carlos Cosme committed numerous racketeering acts, including conspiracy to import and distribute more than 50 grams, actual, methamphetamine; and B, conspiracy to commit murder.  Do you agree, sir, that is what you did?

MR. LEVINE:  Again, Your Honor, he does agree that the Government could prove that he did that.

THE COURT:  Well, the plea agreement on page 5 -- or page 7 paragraph 5, I am reading exactly from that language, and so is he agreeing that the statement is true or not true?  Mr. Robinson, what is the Government's view?

MR. ROBINSON:  Your Honor, I think the statement speaks for itself, and the defendant has to admit that consistent with paragraph one on page 14 which requires him to give a factual basis at the time of the guilty plea in order for the Government's acceptance of responsibility to kick in.   I'll put him on notice if he comes off the statement in the plea agreement, he jeopardizes the Government's obligation to recommend minus two for acceptance of responsibility.

THE COURT:  I don't -- whatever the agreement is, the agreement is, but this is -- I am asking him while going over this paragraph, and so if he -- he has no obligation to admit to it.  He has no obligation to admit to that.  We can take it off calendar and have a trial date set and we can pursue that.  I am only reading from the agreement, so -- this is page 7 paragraph 5, and I am asking you -- I'll ask you this one more time, Mr. Cosme.  In furtherance of your agreement to participate in the affairs of the FSO, do you agree that you committed numerous racketeering offenses including, A, conspiracy to import and distribute more than 50 grams, actual, of methamphetamine and, B, conspiracy to commit murder?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Given your personal participation in the affairs of the FSO, do you agree that you knew members -- that you knew that members of the FSO would during the time frame of the above-noted conspiracy import and distribute more than 50 grams of actual methamphetamine?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Further, do you agree that you personally performed -- performed numerous overt acts in furtherance of a conspiracy to commit murder, including the recruitment of co-defendant Jose Ortega Nuno to run a hit squad on behalf of you? And I am reading from paragraph -- page 8 paragraph 6.  Do you understand the question, sir?  Do you want me to ask it again?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  This is on page 8 of your plea agreement, paragraph 6, lines 3 through 11. Given your personal participation in the affairs of the FSO, defendant Carlos Cosme knew that members of the FSO would during the time frame of the above-noted conspiracy import and distribute more than 50 grams of actual methamphetamine. Further defendant Carlos Cosme personally performed numerous overt acts in furtherance of a conspiracy to commit murder, including the recruitment of co-defendant Jose Ortega Nuno to run a hit squad on behalf of defendant Cosme.  Do you agree that statement is true?  Do you accept that as part of your factual basis, sir, that statement?

THE DEFENDANT:  It wasn't like that -- yes, Your Honor.  Yes, Your Honor.

THE COURT:  Let me read it again and make sure that I have an answer

that is clear. Here is the statement again, sir, I'll read it to you. Given his personal participation in the affairs of the FSO, defendant Carlos Cosme knew that members of the FSO would during the time frame of the above-noted conspiracy import and distribute more than 50 grams of actual methamphetamine. Further defendant Carlos Cosme personally performed numerous overt acts in furtherance of a conspiracy to commit murder, including the recruitment of co-defendant Jose Ortega Nuno to run a hit squad on behalf of defendant Cosme. Do you agree that statement is true? That statement is in your plea agreement. Do you agree that statement is true?
THE DEFENDANT: Yes, Your Honor.
THE COURT: In furtherance of your agreement to participate in the affairs of FSO, during February of 2010, defendant Cosme agreed to sell a confidential informant, a CI, two pounds of methamphetamine in Tijuana, Mexico. Defendant Cosme knew that the methamphetamine would thereafter be imported into the United States from Mexico. Once one and three-quarter pounds – Was it one and three-quarter pounds that was seized, Mr. Robinson?
MR. ROBINSON: Yes, Your Honor. The way the deal took place, two pounds were sold in Mexico. It was then transported via body cavity smugglers across the border. Customs stopped one of the body smugglers with a quarter pound, so total of one and three-quarter pounds was actually smuggled into the United States.
THE COURT: I understand. Let me go back and start at the beginning of this page, paragraph 7. Do you agree, Mr. Cosme, that in furtherance of your agreement to participation in the affairs of the FSO during February of 2010 you arranged to sell a confidential informant two pounds of methamphetamine in Tijuana, Mexico, and you knew that the methamphetamine thereafter would be imported into the United States from Mexico, and once one and three-quarter pounds -- one-quarter pound was seized at the border by US law enforcement officials -- of methamphetamine, 758 actual grams of methamphetamine, had been successfully imported into the United States, the CI paid you for the methamphetamine? Do you agree that is true?
THE DEFENDANT: Yes, Your Honor.
THE COURT: Do you understand by admitting to these facts you've admitted -- you have admitted to each of the charges that have been filed against you, both Counts 1 and 2, sir?
THE DEFENDANT: Yes, Your Honor.

(ECF No. 1913-1 at 31-42).

The Court reviewed the sentencing provisions of the plea agreement including the joint sentencing recommendation. Defendant stated that he understood that the maximum penalty for the charge in Count 1 included life in prison and that the plea agreement provides that the joint recommendation of the parties would be 235 months in custody. At the conclusion of the plea, the Court stated on the record in open court: "The pleas to Count 1 and 2 are accepted. I find the defendant has freely, voluntarily, and competently entered the pleas; that he understands the plea agreement, including

the forfeiture provision; the charges against him and the consequences of the plea; that there is a factual basis for the plea and that the defendant has knowingly intelligently waived his rights." (ECF No. 1913-1 at 45). Sentencing was set for August 27, 2012 at 9 a.m.

On September 11, 2012 , the Probation Office filed the presentence report. The report concluded that the sentencing guideline range was 210 to 262 months.

On October 5, 2012, Defendant filed a motion to withdraw his plea of guilty and a request for new counsel. Attached to the motion as Exhibit A was a letter from Defendant Cosme to defense counsel dated May 28, 2012 stating:

> Your client Carlos Cosme asked me to interpret this letter to him.
> There are several issues that he feels were not clarified as to his "Plea Agreement."
> He is under the clear impression that your never informed him as to the act that he had contracted co/Def. Jose Antonio Ortega Nuno to operate and or supervise a 'hit squad' in Tijuana. This was never mentioned as part of his plea agreement he signed, or at least this is his understanding.
> He feels totally betrayed as to this issue in particular, otherwise he would have taken this to trial.
> Carlos Cosme asked your clearly as to this issue and you told him this 'plea agreement' only had to do with the drug issue (the methamphetamine).
> He wishes for you to visit him along with Ms. Esther Sardina and Coral Ramirez Irales investigator and translator respectively to clarify this tremendous misunderstanding.
> He pled to this in front of Honorable William Hayes but under extreme pressure after he was asked by the Judge twice, and upon him been hesitant and or not affirmative in his response, you pinched him in the side and told him to say 'yes' 'guilty', he felt totally intimidated.
> Please do come see him before he takes other measures.
> He says he also told you 'not to sell him out.'
> Now he feels you have done so.

(ECF No. 1868 at 8). Exhibit B attached to the motion to withdraw the plea is an undated letter addressed to "Mr. Judge William Q. Hayes" from Carlos Cosme explaining his relationship with Jose Ortega Nuno and stating in part "I <u>NEVER RECRUITED ANTONIO ORTEGA WITH THE PLAN/GOAL TO CARRY OUT ANY MURDERS.</u>" (ECF No. 1868 at 13). Exhibit C attached to the motion to withdraw the plea is a letter dated June 6, 2012 which stated in part:

> I Carlos Cosme am completely convinced that the plea agreement that I signed was for the sale of methamphetamine, <u>which is what you told me</u>, and not for any other charge and much less for the one to recruit Antonio

> Ortega and conspire to murder... I tried giving an explanation to the judge but I felt very intimidated and the judge observed that I was not answering anything regarding the accusation of Antonio Ortega and that is when you (Donald L. Levine) lightly hit me or patted me in the back and I felt so intimidated and under extreme pressure for the action you took upon me and because of this reason is why I pleaded guilty.

(ECF No. 1868 at 15). The motion to withdraw the plea attached a Declaration of Carlos Cosme in which Cosme stated: "At my entry of plea, on May 25, 2012, when I hesitated in response to Judge Hayes' questioning me about operating and/or supervising a 'hit squad,' my attorney accosted me, punching me in the side. I felt totally intimidated... and that's why I said guilty." (ECF No. 1868 at 6).

On November 19, 2012, the court held a hearing on the motion to withdraw the plea and request for new counsel. The Court appointed new counsel for the Defendant.

On January 25, 2012, Defendant, represented by new counsel, moved the court to enter an order granting his motion to withdraw his guilty plea.

On March 5, 2012, the Court held an evidentiary hearing. Defendant testified at the hearing that the factual allegation of a conspiracy to commit murder including the recruitment of co-defendant Jose Ortega Nuno to run a hit squad "took [him] by surprise." (ECF No. 1953 at 13). Defendant testified that when he answered "It wasn't like that" to the judge's questions he felt a "blow from behind" delivered by his counsel and that " I felt in truth I had to say guilty." *Id*. Defendant testified that he felt confused, frustrated and that he did not have any other way out. Defendant testified that it was his understanding from his counsel that he was pleading guilty to "the sale of the methamphetamine and the RICO." *Id*. at 16.

On cross-examination, Defendant stated that he had been a law enforcement official in Mexico since 1997, and that he had been investigated and imprisoned in Mexico for drug trafficking allegations in 2005. Defendant testified that he refused to admit guilt to charges that he did not do while he was n prison in Mexico despite threats of physical violence and other psychological pressures tactics and that the charges were eventually dropped.

Defense counsel Levine testified at the evidentiary hearing. Levine stated that

he answered for the Defendant at the time of the plea colloquy because it is simply more expeditious at times to state what the Government could prove. Levine testified that he did not have any reason to believe at the time of the plea colloquy that the Defendant was not willing to accept responsibility for forming the hit squad with co-defendant Nuno. Levine testified:

> Q (Defense counsel): Do you recall that at some point either hitting Mr. Cosme on the back or the side or telling him anything to try to get the plea colloquy going?
> A (Levine): Well to correct that, I never hit him. At one point I gently placed my hand on his shoulder and indicated to him that he needed to answer the question yes or no.
> Q: And that is the only thing you ever said to him?
> A: During the colloquy?
> Q: Yes.

(ECF No. 1935 at 45).

Levine testified that he has been engaged in federal criminal defense for twenty-five years, that he has represented thousands of clients in federal court, and that ninety-eight percent of those clients resolved their case with a plea agreement. Levine testified that he is conversant in Spanish but that it is his practice to use an interpreter every time he has a Spanish speaking client and that he followed that practice in this case. Levine testified that he and the interpreter reviewed the plea agreement with the Defendant line by line and that he witnessed the defendant initial each page and sign the plea agreement. Levine testified that he would never allow a client to sign a plea agreement that had not been thoroughly communicated to him or her. Levine testified that he recalled reviewing the plea agreement in this case with the Defendant and that he followed his standard practice in this case. Levine testified that he reviewed the factual basis of the plea agreement with the Defendant, including the paragraph specifically referencing the "hit squad." Levine testified:

> Q (Government counsel): When you were reviewing the plea agreement with Mr. Cosme did you review the factual basis?
> A (Levine): I reviewed everything in the plea agreement.
> Q: Did you advise him that the agreement required him to plead guilty to conspiracy to commit murder as one of the racketeering acts?
> A: Yes.
> Q: And did you advise him that in particular the plea agreement required him to admit that he formed a hit squad with his co-defendant Mr. Ortega

> Nuno?
> A : Yes in fact I had Mr. Ortega Nuno's plea agreement as well and we discussed the contents of that plea agreement which mirrors that part of Mr. Cosme's plea agreement.
> Q: In your mind was there any confusion voiced by Mr. Cosme about the admission he was required to make regarding the conspiracy to commit murder?
> A: No.

*Id.* at 52.

## CONTENTIONS OF THE PARTIES

Defendant contends that he has provided sufficient evidence to met the standard for withdrawing his plea. Defendant asserts that he need not prove that the plea was invalid. Defendant asserts that the events and circumstances that transpired on May 25, 2012 in the plea colloquy provide a fair and just reason to withdraw his guilty plea. Defendant asserts that his motion to withdraw his guilty plea should be granted on the following grounds: "(1) he did not understand he was pleading guilty to the allegation regarding the 'hit squad'; (2) he was pressured and compelled into pleading guilty by his then attorney..., and (3) as stated throughout the Presentence Report there is no evidence or factual basis to believe the overt act of organizing a 'hit squad' alleged in the plea agreement, actually transpired." (ECF No. 1906-1 at 5).

The Government contends that the Court should deny the motion to withdraw the plea of guilty because the Defendant has failed to establish a fair and just reason to permit the withdrawal of the plea. The Government asserts that the Court properly informed the Defendant of the elements of the crime, the penalties, and thoroughly reviewed the factual basis for the plea. The Government asserts that the Court properly concluded that the Defendant's plea was knowing and voluntary, and supported by a factual basis. The Government contends that there are no circumstances which would support the Defendant's motion to withdraw the plea.

## APPLICABLE LAW

Rule 11(d)(2)(B) states that "A defendant may withdraw a plea of guilty... after the court accepts the plea, but before it imposes sentence, if: ...the defendant can show a fair and just reason for requesting withdrawal." In *United States v. Nostratis*, 321

F.3d 1206 (9th Cir. 2003), the Court of Appeals stated:

> Prior to sentencing, a defendant can withdraw his guilty plea only by showing a fair and just reason for withdrawal. Fed.R.Crim.P. 11(d)(2)(B). A defendant does not always have the right to withdraw a plea because the decision to allow withdrawal of a plea is solely within the discretion of the district court. The defendant has the burden to show a fair and just reason for withdrawal of a plea.

*Id.* at 1208. (citations omitted).

"[W]hile a plea's invalidity qualifies as a 'fair and just reason' for permitting withdrawal, it is not a prerequisite to withdrawal." *United States v. Garcia*, 401 F.3d 1008, 1012 (9th Cir. 2005) (citation omitted). "Fair and just reasons for withdrawal include inadequate Rule 11 plea colloquies, newly discovered evidence, intervening circumstances, or any other reason for withdrawing the plea that did not exist when the defendant entered the plea." *Id.* at 1011. "Like the voluntariness of the plea, a defendant's claim of innocence can clearly be considered in support of his motion to withdraw a plea." *Id.* at 1012.

In *United States v. Hyde*, 520 U.S. 670 (1997), the United States Supreme Court applied the "fair and just reason" standard to a defendant who had been allowed to withdraw his plea of guilty by the Court of Appeals for the Ninth Circuit. The Court of Appeals had concluded that the defendant "had an absolute right to withdraw his guilty plea before the District Court accepted the plea agreement." *Id.* at 673. The Supreme Court did not agree and explained:

> Not only is the Court of Appeals' holding contradicted by the very language of the Rules. It also debases the judicial proceeding at which a defendant pleads and the court accepts his plea. After the defendant has sworn in open court that he actually committed the crimes, after the court found a factual basis for the plea, and after the court has explicitly announced that it accepts the plea, the Court of Appeals would allow the defendant to withdraw his guilty plea simply on a lark. The Advisory Committee, in adding the 'fair and just reason' standard to Rule 32(e) in 1983 explained why this cannot be so:
>> Given the great care with which pleas are taken under the revised Rule 11, there is no reason to view pleas so taken as merely 'tentative,' subject to withdrawal before sentence whenever the government cannot establish prejudice. Were withdrawal automatic in every case where the defendant decided to alter his tactics and present his theory of case to the jury, the guilty plea would become a mere gesture, a temporary and meaningless formality reversible at the

> defendant's whim. In fact, however, a guilty plea is no such trifle, but a grave and solemn act, which is accepted only with care and discernment."

*Id*. at 676-677.

## RULING OF THE COURT

Initially, Defendant contends that he was coerced into pleading guilty and therefore the plea was not voluntary. The Court finds that there is no credible evidence in this case that defense counsel Levine physically or psychologically intimidated the Defendant at the factual admission of the plea colloquy or at any other time.

After the Defendant entered his plea, he began to advance a contention that he was physically coerced by his defense counsel in the courtroom at the time of the plea. The allegations by the Defendant began with a "pinch" (ECF No. 1868 at 8), moved to "lightly hit or patted me in the back" (ECF No. 1868 at 15), and became a "punch ... in the side" (ECF No. 1868 at 6). At the evidentiary hearing, Defendant testified that his counsel delivered a "blow from behind." (ECF No. 1935 at 13). The Court finds the testimony of the Defendant at the evidentiary hearing that he felt a "blow from behind" delivered by his counsel in open court during the plea colloquy entirely without credibility. The Court further finds the testimony of the Defendant that "I felt in truth I had to say guilty" was not truthful and that this testimony is contradicted by all of the other evidence in the record. The Court finds that the Defendant did not testify truthfully in specific aspects of his testimony and concludes that the testimony of the Defendant generally lacked credibility.

Defendant further contends that he did not understand he was pleading guilty to the allegation regarding the 'hit squad' and therefore the plea was not knowing. The Court finds that all of the credible evidence in the record supports the conclusion that the Defendant fully discussed the factual basis for the plea with his counsel, understood the factual admissions in the plea agreement, and understood the factual admission at the plea colloquy.

The Court finds that the testimony of defense counsel Levine that he reviewed

the plea agreement with the Defendant and an interpreter line by line and page by page is credible and supported by the evidence. Defendant's initials appear at the bottom of each page of the plea agreement and the Defendant signed the plea agreement on the last page. Counsel for Defendant testified credibly that his practice was to review the plea agreement thoroughly with an interpreter and Spanish speaking Defendant and that he recalled following these procedures with the Defendant in this case. There is no evidence to the contrary in the record of this case.

Defendant's plea agreement in Paragraph 6 stated that the Defendant stipulates and agrees that the following facts occurred: "[D]efendant Carlos Cosme personally performed numerous overt acts in furtherance of a conspiracy to commit murder, including the recruitment of co defendant Jose Ortega Nuno to run a 'hit squad' on behalf of defendant Cosme." (ECF No. 1703 at 8). Defendant's initials appear at the bottom of this page. Defense counsel Levine testified that he advised the Defendant while reviewing the plea agreement that the plea agreement required him to admit that he formed a hit squad with his co-defendant Ortega-Nuno. Levine testified: "I had Mr. Ortega Nuno's plea agreement as well, and we discussed the contents of that plea agreement which mirrors that part of Mr. Cosme's plea agreement." (ECF No. 1935 at 52). The factual admissions of the Plea Agreement for the Defendant Jose Antonio Ortega Nuno signed by Nuno on December 6, 2001 stated in part: "In furtherance of his agreement to participate in the affairs of the FSO, defendant Jose Antonio Ortega Nuno agreed to operate and supervise a 'hit squad' under the direction of Carlos Cosme. Defendant Jose Antonio Ortega Nuno knew that the 'hit squad' he agreed to operate and supervise would be tasked with murdering individuals on behalf of the FSO." (ECF No. 1152 at 6). This provision mirrors the provision in Defendant Cosme's Plea Agreement and supports the testimony of defense counsel Levine that he advised that Defendant Cosme that the plea agreement required him to admit that he formed a hit squad with his co-defendant Ortega-Nuno, as well as Levine's testimony that there was no confusion voiced by the Defendant Cosme that he was required to make this admission

regarding the conspiracy to commit murder.

At the time of the Rule 11 plea colloquy, the Court reviewed each of the seven paragraphs of the factual basis of the plea with the Defendant in open court. The Court stated: "Do you agree that pursuant to your agreement to participate in the affairs of the FSO you were aware of the FSO's racketeering activities, including the commission of the crimes specified above that I just referred to, including the crimes of conspiracy to import and distribute over 50 grams pure of methamphetamine and conspiracy to commit murder?" Defendant answered: "Yes, Your Honor." The Court asked the Defendant about his personal participation as stated in Paragraph 6 of the Plea Agreement.

> THE COURT: I don't -- whatever the agreement is, the agreement is, but this is -- I am asking him while going over this paragraph, and so if he -- he has no obligation to admit to it. He has no obligation to admit to that. We can take it off calendar and have a trial date set and we can pursue that. I am only reading from the agreement, so -- this is page 7 paragraph 5, and I am asking you -- I'll ask you this one more time, Mr. Cosme. In furtherance of your agreement to participate in the affairs of the FSO, do you agree that you committed numerous racketeering offenses including, A, conspiracy to import and distribute more than 50 grams, actual, of methamphetamine and, B, conspiracy to commit murder?
> THE DEFENDANT: Yes, Your Honor.
> THE COURT: Given your personal participation in the affairs of the FSO, do you agree that you knew members -- that you knew that members of the FSO would during the time frame of the above-noted conspiracy import and distribute more than 50 grams of actual methamphetamine?
> THE DEFENDANT: Yes, Your Honor.
> THE COURT: Further, do you agree that you personally performed -- performed numerous overt acts in furtherance of a conspiracy to commit murder, including the recruitment of co-defendant Jose Ortega Nuno to run a hit squad on behalf of you? And I am reading from paragraph -- page 8 paragraph 6. Do you understand the question, sir? Do you want me to ask it again?
> THE DEFENDANT: Yes, Your Honor.
> THE COURT: This is on page 8 of your plea agreement, paragraph 6, lines 3 through 11. Given your personal participation in the affairs of the FSO, defendant Carlos Cosme knew that members of the FSO would during the time frame of the above-noted conspiracy import and distribute more than 50 grams of actual methamphetamine. Further defendant Carlos Cosme personally performed numerous overt acts in furtherance of a conspiracy to commit murder, including the recruitment of co-defendant Jose Ortega Nuno to run a hit squad on behalf of defendant Cosme. Do you agree that statement is true? Do you accept that as part of your factual basis, sir, that statement?
> THE DEFENDANT: It wasn't like that -- yes, Your Honor. Yes, Your Honor.
> THE COURT: Let me read it again and make sure that I have an answer

> that is clear. Here is the statement again, sir, I'll read it to you. Given his personal participation in the affairs of the FSO, defendant Carlos Cosme knew that members of the FSO would during the time frame of the above-noted conspiracy import and distribute more than 50 grams of actual methamphetamine. Further defendant Carlos Cosme personally performed numerous overt acts in furtherance of a conspiracy to commit murder, including the recruitment of co-defendant Jose Ortega Nuno to run a hit squad on behalf of defendant Cosme. Do you agree that statement is true? That statement is in your plea agreement. Do you agree that statement is true?
> THE DEFENDANT: Yes, Your Honor.

(ECF No. 1913-1 at 41). The Court asked the Defendant in open court to acknowledge his personal participation in the conspiracy to distribute methamphetamine and the conspiracy to commit murder. When defense counsel answered on behalf of the Defendant, the Court asked that the Defendant personally answer. Reading from the facts stipulated by the Defendant in the Plea Agreement, the Court stated: "[D]efendant Carlos Cosme personally performed numerous overt acts in furtherance of a conspiracy to commit murder, including the recruitment of co-defendant Jose Ortega Nuno to run a hit squad on behalf of defendant Cosme. Do you agree that statement is true? Do you accept that as part of your factual basis, sir, that statement?" Defendant answered: "It wasn't like that -- yes, Your Honor. Yes, Your Honor." The Court stated:

> Let me read it again and make sure that I have an answer that is clear. Here is the statement again, sir, I'll read it to you. Given his personal participation in the affairs of the FSO, defendant Carlos Cosme knew that members of the FSO would during the time frame of the above-noted conspiracy import and distribute more than 50 grams of actual methamphetamine. Further defendant Carlos Cosme personally performed numerous overt acts in furtherance of a conspiracy to commit murder, including the recruitment of co-defendant José Ortega Nuno to run a hit squad on behalf of defendant Cosme. Do you agree that statement is true? That statement is in your plea agreement. Do you agree that statement is true?

(ECF No. ). Defendant unequivocally answered: "Yes, Your Honor." The Court examined each of the factual admissions in the plea agreement independently and thoroughly. The Court informed the Defendant that he had no obligation to admit any facts in the Plea Agreement, and that he could go forward on the trial date. (ECF No. 1913-1 at 35) ("He has no obligation to admit to it. He has no obligation to admit to that. We can take it off calendar and have a trial date set and we can pursue that.") In

order to avoid any confusion, the Court stated: "Let me read it again and make sure that I have an answer that is clear." After reading Paragraph 6 of the Plea Agreement in its entirety, the Court stated: "Do you agree that statement is true? That statement is in your plea agreement. Do you agree that statement is true?" Defendant stated: "Yes Your Honor." *Id.* at 37.

At the time of the plea, the Court found that the Defendant knowingly admitted the factual basis for the plea of guilty. The Court concludes that there is no credible evidence to the contrary in this record. Defendant's claim that he did not know that the Plea Agreement contained an admission to conspiring to commit murder or that he did not knowingly make those admissions at the plea hearing is directly contradicted by the Plea Agreement, the Defendant's statements at the plea colloquy, and the credible testimony at the evidentiary hearing.

Finally, Defendant contends that "there is no evidence or factual basis to believe the overt act of organizing a 'hit squad' alleged in the plea agreement, actually transpired." (ECF No. 1906-1 at 5). Defendant asserts that the phone conversations intercepted by the Government have been improperly interpreted. Defendant asserts that any reference to a "hit" that was to occur "was *not* a murder, but an arrest of the competing street vendors. When Mr. Cosme referred to a 'knife on them' the conversational figure of speech was intended to explain placing a knife on the individual's person, not in them, a method of taking a person into custody (i.e. pretext arrest)." (ECF No. 1906-1 at 10).

Defendant admitted at the evidentiary hearing that he used code words (12,1 and cashing a check) to refer to homicide on the taped conversations, that he advised a person known as Cabo that he had individuals in Mexico who could commit homicides at his request, and that he sold an album of police officer photographs to the confidential informant in this case. Defendant admitted at the evidentiary hearing that he knew that the confidential informant wanted to purchase the photographs so that he could target Mexican police officers for physical attack and murder. Defendant's plea

of guilty to conspiracy to commit murder is supported by the factual admissions at the time of the guilty plea and the record in this case.

Defendant signed a Plea Agreement, swore in open court that he committed the facts as stated in the Plea Agreement, and actually committed the crime charged. The Court found a factual basis for the plea and explicitly accepted the plea of guilty. The Court concludes that Defendant has not shown any fair and just reason for requesting withdrawal of his plea of his guilty.

IT IS HEREBY ORDERED that the Defendant's motion to withdraw his guilty plea (ECF No. 1906) is denied and Defendant's motion to withdraw guilty plea (ECF No. 1868) was withdrawn at the motion hearing.

DATED: April 9, 2013

**WILLIAM Q. HAYES**
United States District Judge