# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　Plaintiff/Respondent,<br>　v.<br><br>CARLOS COSME (5),<br><br>　　　　　　Defendant/Petitioner. | 10cr3044WQH<br>16cv653WQH<br>16cv2049 WQH<br>**ORDER** |

HAYES, Judge:

The matter before the court is the motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 filed by the Defendant Carlos Cosme. (ECF No. 2301).

**BACKGROUND FACTS**

On December 22, 2011, the grand jury issued a two-count second superseding indictment. The second superseding indictment charged the Defendant Cosme and others defendants in Count 1 with conspiring to conduct enterprise affairs through a pattern of racketeering activity, in violation of 18 U.S.C. § 1962(d) and in Count 2 with conspiring to distribute cocaine, marijuana and methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(ii), 841(b)(1)(A)(vii), 841(b)(1)(A)(viii) and 846.

On May 21, 2012, Defendant Cosme signed a Plea Agreement. In the Plea Agreement, Defendant agreed to plead guilty to Counts 1 and 2 of the Second Superseding Indictment. The parties agreed to jointly recommend a total offense level of 37 and to recommend that the Court impose a sentence of 235 months. Defendant initialed each page of the Plea Agreement and signed the Plea Agreement on the last

page along with his counsel and counsel for the Government.

The FACTUAL BASIS of the Plea Agreement stated:

Defendant has fully discussed the facts of this case with defense counsel. Defendant has committed each of the elements of the crime, and admits that there is a factual basis for this guilty plea. Defendant stipulates and agrees that the facts set forth in the numbered paragraphs below occurred. Defendant also stipulates and agrees that if this case were to proceed to trial, the Government could prove the following facts beyond a reasonable doubt by competent and admissible evidence:

1. Between the time period of November 2008 and July 22, 2010, defendant Carlos Cosme entered into an agreement with other individuals named in the above-noted charge to participate in the affairs of the Fernando Sanchez Organization (the "FSO"), an "association-in-fact" enterprise as defined in Title 18, United States Code, Section 1961(4). Defendant Carlos Cosme agreed that a member of the FSO would commit at least two racketeering acts.

2. During the time period noted above, members of the FSO engaged in a pattern of racketeering activity, to include the commission of the following crimes: murder; conspiracy to commit murder; attempted murder; kidnaping; conspiracy to kidnap; attempted kidnaping; robbery; conspiracy to commit robbery; attempted robbery; importation of controlled substances into the United States from Mexico; conspiracy to import controlled substances into the United States from Mexico; distribution of controlled substances; conspiracy to distribute controlled substances; money laundering; and conspiracy to launder money. The FSO's pattern of racketeering activity affected interstate and foreign commerce. During the time period relevant to this guilty plea, the FSO operated in the Southern District of California and elsewhere.

3. Pursuant to his agreement to participate in the affairs of the FSO, defendant Carlos Cosme was aware that the FSO's racketeering activities included the commission of the crimes specified above in the preceding paragraph, including the crimes of: (a) conspiracy to import and distribute over 50 grams (pure) of methamphetamine; and (b) conspiracy to commit murder.

4. The FSO constitutes an ongoing organization whose members function as a continuing unit for the common purpose of achieving the objectives of the FSO, which include: (a) enriching the members of the FSO through, among other things, the importation and distribution of illegal narcotics in the United States, committing robberies, the kidnaping of individuals in the United States and Mexico, and "taxing" individuals involved in criminal activities within the geographical areas controlled by the Enterprise, to include Tijuana, Mexico, and areas of San Diego, California; (b) keeping rival traffickers, potential informants, witnesses against the FSO, law enforcement, the media, and the public-at-large in fear of the FSO, and in fear of its members and associates through threats of violence and violence; (c) preserving, protecting and expanding the power of the FSO through the use of intimidation, violence, threats of violence, assaults and murders; (d) preserving the continuity of membership in the FSO by threatening members, associates and individuals with knowledge of the FSO's illegal activities wishing to

leave the FSO with violence, assault and murder; and (e) preserving the ongoing viability of the FSO by assaulting law enforcement officers attempting to arrest FSO members, bribing public officials to secure the release of arrested FSO members and making payments to public officials in order to gain access to confidential law enforcement information adverse to the interests of the FSO.

5. In furtherance of his agreement to participate in the affairs of the FSO, defendant Carlos Cosme committed numerous racketeering offenses, including: (a) conspiracy to import and distribute more than 50 grams (actual) of methamphetamine and (b) conspiracy to commit murder.

6. Given his personal participation in the affairs of the FSO, defendant Carlos Cosme knew that members of the FSO would, during the time frame of the above-noted conspiracy, import and distribute more than 50 grams of actual methamphetamine. Further, defendant Carlos Cosme personally performed numerous overt acts in furtherance of a conspiracy to commit murder, including the recruitment of codefendant Jose Ortega Nuno to run a "hit squad" on behalf of defendant Cosme.

7. In furtherance of his agreement to participate in the affairs of the FSO, during February 2010, defendant Cosme arranged to sell a confidential informant ("CI") 2 pounds of methamphetamine in Tijuana, Mexico. Defendant Cosme knew that the methamphetamine would thereafter be imported into the United States from Mexico. Once 1 3/4 pounds (1/4 pound was seized at the border by U.S. law enforcement officials) of methamphetamine (758 grams of actual methamphetamine) had been successfully imported into the United States, the CI paid defendant Cosme for the methamphetamine.

(ECF No. 1703 at 5-8). These factual admissions are contained on Pages 5, 6, 7 and 8 of the Plea Agreement. Defendant's initials appear at the bottom right of each page as follows: ("Def. Initials CC )". The Plea Agreement stated that "... the Government will not be obligated to recommend any adjustment of Acceptance of Responsibility if defendant engages in conduct inconsistent with acceptance of responsibility including, but not limited to, the following: ... Materially breaches this plea agreement in any way." *Id*. at 14. The Plea Agreement provided:

> Defendant acknowledges, understands and agrees that if defendant violates or fails to perform any of defendant's obligations under this agreement, such violation or failure to perform may constitute a material breach of this agreement.
> Defendant acknowledges, understands and agrees further that the following non-exhaustive list of conduct by defendant unquestionably constitutes a material breach of this plea agreement: ...
> 4. Attempting to withdraw the plea...
> In the event of defendant's material breach of this plea agreement, defendant will not be able to enforce any of its provisions, and the Government will be relieved of all its obligations under this plea agreement.

*Id.* at 17.

On May 25, 2012, Defendant appeared before this district court judge for a change of plea to the second superseding indictment pursuant to the Plea Agreement. At the change of plea hearing, Defendant, represented by counsel, acknowledged that he had been sworn under penalty of perjury and that he could be prosecuted for perjury if he failed to provide truthful answers in this proceedings. Defendant represented that he initialed each page of the plea agreement and signed his name on the last page of the agreement. Defendant represented to the Court that he had an opportunity to review the plea agreement paragraph by paragraph and line by line with his counsel and that the agreement was translated to him in the Spanish language. Defendant represented to the Court that he was satisfied with the services of his counsel and that he had no questions about the terms of the plea agreement.

The Court reviewed the elements of the charge in Count One and the elements of the charge in Count Two. Defendant stated that he understood that by admitting – or pleading guilty to these offenses he will be admitting to each element of the offenses. The Court then reviewed each of the seven paragraphs of the factual basis for the plea contained in the Plea Agreement starting on page 5 and continuing through page 8. The plea colloquy provided in part as follows:

> THE COURT: Do you agree that pursuant to your agreement to participate in the affairs of the FSO you were aware of the FSO's racketeering activities, including the commission of the crimes specified above that I just referred to, including the crimes of conspiracy to import and distribute over 50 grams pure of methamphetamine and conspiracy to commit murder?
> THE DEFENDANT: Yes, Your Honor.
> THE COURT: Do you agree that the FSO constitutes an on-going organization whose members function as a continuing unit for the common purpose of achieving the objectives of the FSO which include enriching the members of the FSO through among other things the importation and distribution of illegal narcotics into the United States, committing robberies, the kidnaping of individuals in the United States and Mexico, taxing individuals involved in criminal activities within the geographical areas controlled by the enterprise to include Tijuana, Mexico, and areas of San Diego, California?
> THE DEFENDANT: Yes, Your Honor.
> THE COURT: It is also includes keeping rival drug traffickers, potential informants, witnesses against the FSO, law enforcement, the media and the public at large in fear of the FSO, in fear of its members and associates

through threats of violence and harm?
THE DEFENDANT: Yes, Your Honor.
THE COURT: That includes preserving, protecting, and expanding the power of the FSO through the use of intimidation, violence, threats of violence, assaults and murders?
THE DEFENDANT: Yes, Your Honor. I understand.
THE COURT: Preserving the continuity of membership in the FSO by threatening members, associates, and individuals with knowledge of the FSO's illegal activities wishing to leave the FSO with violence, assault and murder, and preserving the on-going viability of the FSO, by assaulting law enforcement officers attempting to arrest FSO members, bribing public officials to secure the release of arrested FSO members, and making payments to public officials in order to gain access to confidential law enforcement information adverse to the interests of the FSO?
THE DEFENDANT: Yes, Your Honor. I understand.
. . .
THE COURT: Further, do you agree that you personally performed -- performed numerous overt acts in furtherance of a conspiracy to commit murder, including the recruitment of co-defendant Jose Ortega Nuno to run a hit squad on behalf of you? And I am reading from paragraph -- page 8 paragraph 6. Do you understand the question, sir? Do you want me to ask it again?
THE DEFENDANT: Yes, Your Honor.
THE COURT: This is on page 8 of your plea agreement, paragraph 6, lines 3 through 11. Given your personal participation in the affairs of the FSO, defendant Carlos Cosme knew that members of the FSO would during the time frame of the above-noted conspiracy import and distribute more than 50 grams of actual methamphetamine. Further defendant Carlos Cosme personally performed numerous overt acts in furtherance of a conspiracy to commit murder, including the recruitment of co-defendant Jose Ortega Nuno to run a hit squad on behalf of defendant Cosme. Do you agree that statement is true? Do you accept that as part of your factual basis, sir, that statement?
THE DEFENDANT: It wasn't like that -- yes, Your Honor. Yes, Your Honor.
THE COURT: Let me read it again and make sure that I have an answer that is clear. Here is the statement again, sir, I'll read it to you. Given his personal participation in the affairs of the FSO, defendant Carlos Cosme knew that members of the FSO would during the time frame of the above-noted conspiracy import and distribute more than 50 grams of actual methamphetamine. Further defendant Carlos Cosme personally performed numerous overt acts in furtherance of a conspiracy to commit murder, including the recruitment of co-defendant Jose Ortega Nuno to run a hit squad on behalf of defendant Cosme. Do you agree that statement is true? That statement is in your plea agreement. Do you agree that statement is true?
THE DEFENDANT: Yes, Your Honor.

(ECF No. 1913-1 at 32-37).

The Court reviewed the sentencing provisions of the plea agreement including the joint sentencing recommendation. Defendant stated that he understood that the maximum penalty for the charge in Count 1 included life in prison and that the plea

agreement provides that the joint recommendation of the parties would be 235 months in custody. At the conclusion of the plea, the Court stated on the record in open court: "The pleas to Count 1 and 2 are accepted. I find the defendant has freely, voluntarily, and competently entered the pleas; that he understands the plea agreement, including the forfeiture provision; the charges against him and the consequences of the plea; that there is a factual basis for the plea and that the defendant has knowingly intelligently waived his rights." (ECF No. 1913-1 at 45).

On October 5, 2012, Defendant filed a motion to withdraw his plea of guilty and a request for new counsel. (ECF No. 1868). The Court granted Defendant's request for new counsel and provided new counsel with the opportunity to meet with the Defendant and to decide whether or not to pursue the motion to withdraw his plea.

On January 25, 2013, Defendant filed a second motion to withdraw his plea of guilty. (ECF No. 1906). The Court subsequently held an evidentiary hearing at which prior counsel and the Defendant testified. Defendant testified under oath at the evidentiary hearing that the factual allegation of a conspiracy to commit murder including the recruitment of co-defendant Jose Ortega Nuno to run a hit squad "took [him] by surprise." (ECF No. 1935 at 13). Defendant testified that when he answered "It wasn't like that" to the judge's questions he felt a "blow from behind" delivered by his counsel and that "I felt in truth I had to say guilty." *Id*. Defendant testified that it was his understanding from his counsel that he was pleading guilty to "the sale of the methamphetamine and the RICO." *Id*. at 16. Defendant testified as follows:

> Defense counsel: Okay. Did you agree at any time to plead guilty to forming a hit squad as alleged in the plea agreement with co-defendant Antonio Nuno?
> Defendant: No, I wasn't in agreement.

*Id.*

On April 19, 2013, the Court entered and order denying the Defendant's motion to withdraw his guilty plea. (ECF No. 1940). The Court stated:

> The Court examined each of the factual admissions in the plea agreement independently and thoroughly. The Court informed the Defendant that he had no obligation to admit any facts in the Plea Agreement, and that he

could go forward on the trial date. (ECF No. 1913-1 at 35) ("He has no obligation to admit to it. He has no obligation to admit to that. We can take it off calendar and have a trial date set and we can pursue that.") In order to avoid any confusion, the Court stated: "Let me read it again and make sure that I have an answer that is clear." After reading Paragraph 6 of the Plea Agreement in its entirety, the Court stated: "Do you agree that statement is true? That statement is in your plea agreement. Do you agree that statement is true?" Defendant stated: "Yes Your Honor." *Id.* at 37.

At the time of the plea, the Court found that the Defendant knowingly admitted the factual basis for the plea of guilty. The Court concludes that there is no credible evidence to the contrary in this record. Defendant's claim that he did not know that the Plea Agreement contained an admission to conspiring to commit murder or that he did not knowingly make those admissions at the plea hearing is directly contradicted by the Plea Agreement, the Defendant's statements at the plea colloquy, and the credible testimony at the evidentiary hearing.

Finally, Defendant contends that "there is no evidence or factual basis to believe the overt act of organizing a 'hit squad' alleged in the plea agreement, actually transpired." (ECF No. 1906-1 at 5). Defendant asserts that the phone conversations intercepted by the Government have been improperly interpreted. Defendant asserts that any reference to a "hit" that was to occur "was *not* a murder, but an arrest of the competing street vendors. When Mr. Cosme referred to a 'knife on them' the conversational figure of speech was intended to explain placing a knife on the individual's person, not in them, a method of taking a person into custody (i.e. pretext arrest)." (ECF No. 1906-1 at 10).

Defendant admitted at the evidentiary hearing that he used code words (12,1 and cashing a check) to refer to homicide on the taped conversations, that he advised a person known as Cabo that he had individuals in Mexico who could commit homicides at his request, and that he sold an album of police officer photographs to the confidential informant in this case. Defendant admitted at the evidentiary hearing that he knew that the confidential informant wanted to purchase the photographs so that he could target Mexican police officers for physical attack and murder. Defendant's plea of guilty to conspiracy to commit murder is supported by the factual admissions at the time of the guilty plea and the record in this case.

Defendant signed a Plea Agreement, swore in open court that he committed the facts as stated in the Plea Agreement, and actually committed the crime charged. The Court found a factual basis for the plea and explicitly accepted the plea of guilty. The Court concludes that Defendant has not shown any fair and just reason for requesting withdrawal of his plea of his guilty.

(ECF No. 1940 at 18-19).

Plaintiff United States of America, subsequently, filed a motion for an order finding Defendant's material breach of the plea agreement. On June 21, 2013, this Court granted the motion for an order finding Defendant's material breach of the plea agreement. The Court concluded "that the Defendant materially breached the Plea Agreement by testifying under oath at the evidentiary hearing on the motion to

withdraw his plea of guilty to facts directly contrary to the facts admitted in the 'factual basis' portion of the Plea Agreement and admitted by the Defendant under oath at the plea hearing." (ECF No. 1989 at 11).

On June 28, 2013, the Court sentenced the Defendant to a term of imprisonment of 262 months in custody as to each count concurrently. (ECF No. 1995 at 2).

Defendant filed a timely notice of appeal to the Court of Appeals for the Ninth Circuit on the grounds that the decision of the district court to deny his motion to withdraw his guilty plea was an abuse of discretion.

On December 15, 2014, the Court of Appeals dismissed the appeal. The Court of Appeals concluded that the district court did not abuse its discretion in denying Defendant's motion to withdraw his plea and that Defendant knowingly and voluntarily waived his right to appeal the district court's order. (ECF No. 2183).

On June 24, 2015, Defendant Carlos Cosme filed a request for the Court to appoint counsel to assist him in the preparation of a writ of habeas corpus. (ECF No. 2144). Defendant informed the Court that he did not speak or write the English language and was unable to represent himself.

On September 1, 2015, this Court entered an order appointing counsel to represent the Defendant in the preparation of a writ of habeas corpus. (ECF No. 2235).

On March 14, 2016, Defendant Carlos Cosme, representing himself, filed a motions pursuant to 28 U.S.C. § 2255. (ECF No. 2283).

On April 27, 2016, the Court ordered that Defendant Cosme and appointed counsel for Defendant Cosme shall notify the Court in writing within 45 days of this order whether Defendant will proceed representing himself or proceed through appointed counsel. (ECF No. 2286).

On May 25, 2016, Defendant Cosme notified the Court in writing that he would proceed through appointed counsel. (ECF No. 2290).

On August 09, 2016, Defendant Cosme, represented by counsel, filed a motion

pursuant to 28 U.S.C. § 2255. (ECF No. 2301).[1]

On November 07, 2016, Plaintiff United States filed a response.

## APPLICABLE LAW

28 U.S.C. §2255 provides that "A prisoner under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence."

## CONTENTIONS OF PARTIES

Defendant contends that he received ineffective assistance of counsel during the plea agreement negotiations, execution of the written plea agreement with the Government, and at the change of plea hearing held on May 25, 2012. Due to the ineffective assistance of counsel, Defendant asserts that his plea agreement was not knowing or voluntary. Defendant asserts that "his counsel did not inform him that, he was admitting to recruiting for and forming a 'hit squad' . . . an allegation which he vehemently denies." (ECF No. 2301 at 7). Defendant contends that his counsel informed him that he was admitting only to the distribution of methamphetamine and the RICO count in general without any factual allegations related to murder.

Plaintiff United States contends that all of the assertions that support the claim for ineffective assistance of counsel were fully litigated and resolved at the time Defendant moved to withdraw his plea. Plaintiff United States asserts that the same factual claims relating to the conduct of prior counsel were adversely decided against Defendant and that Defendant is not entitled to relitigate these factual issues in this collateral attack.

---

[1] Motion (ECF No. 2283) filed on March 14, 2016, by Defendant Carlos Cosme, representing himself, was deemed moot.

**RULING OF COURT**

The Sixth Amendment right to effective assistance of counsel "applies to all critical stages of criminal proceedings," including "the entry of a guilty plea." *Missouri v. Frye*, 132 S. Ct. 1399, 1405 (2012). A defendant is entitled to challenge the intelligent, knowing, and voluntary aspects of his plea by demonstrating that the advice he received from counsel did not constitute effective representation. *See Lambert v. Blodgett*, 393 F.3d 943, 979-80 (9th Cir. 2004).

In order to prevail on a claim of ineffective assistance of counsel, Petitioner must show that representation of counsel fell below an objective standard of reasonableness, and that any deficiencies in counsel's performance were prejudicial. *See Strickland v. Washington*, 466 U.S. 688, 690 (1984). Both deficient performance and prejudice are required before it can be said that a conviction or sentence resulted from a breakdown in the adversary process that rendered the result of the proceeding unreliable and thus in violation of the Sixth Amendment. *See United States v. Thomas*, 417 F.3d 1053, 1056 (9th Cir. 2005). To prevail on the prejudice prong of a claim of ineffective assistance of counsel, the defendant must show that there is "a reasonable probability that, but for counsel's unprofessional errors, the results of the proceedings would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 69.

Defendant sets forth the following three specific factual assertions in support of his claim of ineffective assistance of counsel: 1) his counsel did not inform him that, he was admitting to recruiting for and forming a 'hit squad' with co-defendant Jose Antonio Ortega Nuno; 2) his counsel informed him that he was admitting only to the distribution of methamphetamine and the RICO count in general without any factual allegations related to murder; and 3) his counsel intimated him during the plea colloquy to admit the "hit squad" allegation. The identical factual issues were litigated as a basis for Defendant's motion to withdraw his plea. During the litigation of this motion, the parties submitted extensive briefing, and the Court held a two day evidentiary hearing,

which included the testimony of prior defense counsel and the Defendant. At the conclusion of the hearing the Court issued an order finding no credible evidence to support the factual assertions of the Defendant. The Court made the following ruling:

> After the Defendant entered his plea, he began to advance a contention that he was physically coerced by his defense counsel in the courtroom at the time of the plea. The allegations by the Defendant began with a "pinch" (ECF No. 1868 at 8), moved to "lightly hit or patted me in the back" (ECF No. 1868 at 15), and became a "punch ... in the side" (ECF No. 1868 at 6). At the evidentiary hearing, Defendant testified that his counsel delivered a "blow from behind." (ECF No. 1935 at 13). The Court finds the testimony of the Defendant at the evidentiary hearing that he felt a "blow from behind" delivered by his counsel in open court during the plea colloquy entirely without credibility. The Court further finds the testimony of the Defendant that "I felt in truth I had to say guilty" was not truthful and that this testimony is contradicted by all of the other evidence in the record. The Court finds that the Defendant did not testify truthfully in specific aspects of his testimony and concludes that the testimony of the Defendant generally lacked credibility.
>
> . . . The Court finds that all of the credible evidence in the record supports the conclusion that the Defendant fully discussed the factual basis for the plea with his counsel, understood the factual admissions in the plea agreement, and understood the factual admission at the plea colloquy.
>
> The Court finds that the testimony of defense counsel Levine that he reviewed the plea agreement with the Defendant and an interpreter line by line and page by page is credible and supported by the evidence. Defendant's initials appear at the bottom of each page of the plea agreement and the Defendant signed the plea agreement on the last page. Counsel for Defendant testified credibly that his practice was to review the plea agreement thoroughly with an interpreter and Spanish speaking Defendant and that he recalled following these procedures with the Defendant in this case. There is no evidence to the contrary in the record of this case.
>
> Defendant's plea agreement in Paragraph 6 stated that the Defendant stipulates and agrees that the following facts occurred: "[D]efendant Carlos Cosme personally performed numerous overt acts in furtherance of a conspiracy to commit murder, including the recruitment of co defendant Jose Ortega Nuno to run a 'hit squad' on behalf of defendant Cosme." (ECF No. 1703 at 8). Defendant's initials appear at the bottom of this page. Defense counsel Levine testified that he advised the Defendant while reviewing the plea agreement that the plea agreement required him to admit that he formed a hit squad with his co-defendant Ortega-Nuno. Levine testified: "I had Mr. Ortega Nuno's plea agreement as well, and we discussed the contents of that plea agreement which mirrors that part of Mr. Cosme's plea agreement." (ECF No. 1935 at 52). The factual admissions of the Plea Agreement for the Defendant Jose Antonio Ortega Nuno signed by Nuno on December 6, 2001 stated in part: "In furtherance of his agreement to participate in the affairs of the FSO, defendant Jose Antonio Ortega Nuno agreed to operate and supervise a 'hit squad' under the direction of Carlos Cosme. Defendant Jose Antonio Ortega Nuno knew that the 'hit squad' he agreed to operate and supervise would be

tasked with murdering individuals on behalf of the FSO." (ECF No. 1152 at 6). This provision mirrors the provision in Defendant Cosme's Plea Agreement and supports the testimony of defense counsel Levine that he advised that Defendant Cosme that the plea agreement required him to admit that he formed a hit squad with his co-defendant Ortega-Nuno, as well as Levine's testimony that there was no confusion voiced by the Defendant Cosme that he was required to make this admission regarding the conspiracy to commit murder.

At the time of the Rule 11 plea colloquy, the Court reviewed each of the seven paragraphs of the factual basis of the plea with the Defendant in open court. The Court stated: "Do you agree that pursuant to your agreement to participate in the affairs of the FSO you were aware of the FSO's racketeering activities, including the commission of the crimes specified above that I just referred to, including the crimes of conspiracy to import and distribute over 50 grams pure of methamphetamine and conspiracy to commit murder?" Defendant answered: "Yes, Your Honor." The Court asked the Defendant about his personal participation as stated in Paragraph 6 of the Plea Agreement.

> THE COURT: Let me read it again and make sure that I have an answer that is clear. Here is the statement again, sir, I'll read it to you. Given his personal participation in the affairs of the FSO, defendant Carlos Cosme knew that members of the FSO would during the time frame of the above-noted conspiracy import and distribute more than 50 grams of actual methamphetamine. Further defendant Carlos Cosme personally performed numerous overt acts in furtherance of a conspiracy to commit murder, including the recruitment of co-defendant Jose Ortega Nuno to run a hit squad on behalf of defendant Cosme. Do you agree that statement is true? That statement is in your plea agreement. Do you agree that statement is true?
> THE DEFENDANT: Yes, Your Honor.

(ECF No. 1913-1 at 41). The Court asked the Defendant in open court to acknowledge his personal participation in the conspiracy to distribute methamphetamine and the conspiracy to commit murder. When defense counsel answered on behalf of the Defendant, the Court asked that the Defendant personally answer. Reading from the facts stipulated by the Defendant in the Plea Agreement, the Court stated: "[D]efendant Carlos Cosme personally performed numerous overt acts in furtherance of a conspiracy to commit murder, including the recruitment of co-defendant Jose Ortega Nuno to run a hit squad on behalf of defendant Cosme. Do you agree that statement is true? Do you accept that as part of your factual basis, sir, that statement?" Defendant answered: "It wasn't like that -- yes, Your Honor. Yes, Your Honor." The Court stated:

> Let me read it again and make sure that I have an answer that is clear. Here is the statement again, sir, I'll read it to you. Given his personal participation in the affairs of the FSO, defendant Carlos Cosme knew that members of the FSO would during the time frame of the above-noted conspiracy import and distribute more than 50 grams of actual methamphetamine. Further defendant Carlos Cosme personally performed numerous overt acts in furtherance of

- 12 -

> a conspiracy to commit murder, including the recruitment of co-defendant Jose Ortega Nuno to run a hit squad on behalf of defendant Cosme. Do you agree that statement is true? That statement is in your plea agreement. Do you agree that statement is true?
>
> (ECF No. 1913-1 at 41). Defendant unequivocally answered: "Yes, Your Honor." The Court examined each of the factual admissions in the plea agreement independently and thoroughly. The Court informed the Defendant that he had no obligation to admit any facts in the Plea Agreement, and that he could go forward on the trial date. (ECF No. 1913-1 at 35) ("He has no obligation to admit to it. He has no obligation to admit to that. We can take it off calendar and have a trial date set and we can pursue that.") In order to avoid any confusion, the Court stated: "Let me read it again and make sure that I have an answer that is clear." After reading Paragraph 6 of the Plea Agreement in its entirety, the Court stated: "Do you agree that statement is true? That statement is in your plea agreement. Do you agree that statement is true?" Defendant stated: "Yes Your Honor." *Id.* at 37.
>
> At the time of the plea, the Court found that the Defendant knowingly admitted the factual basis for the plea of guilty. The Court concludes that there is no credible evidence to the contrary in this record. Defendant's claim that he did not know that the Plea Agreement contained an admission to conspiring to commit murder or that he did not knowingly make those admissions at the plea hearing is directly contradicted by the Plea Agreement, the Defendant's statements at the plea colloquy, and the credible testimony at the evidentiary hearing.

(ECF No. 1940 at 17-19).

In this case, the Court has found the factual assertions that defense counsel did not properly inform the Defendant of the facts admitted in the Plea Agreement and intimidated the Defendant at the time of the plea lack any credibility and denied the Defendant's motion to withdraw his plea. Defendant filed an appeal and the Court of Appeals affirmed the decision. Having litigated these same factual issues regarding the conduct of his counsel on direct appeal, Defendant may not relitigate the same issue under 28 U.S.C. § 2255. *Foster v. Chapman*, 136 S.Ct. 1737, 1758 (2016), Alito concurring ("As a general rule, federal prisoners may not use a motion under 28 U.S.C. § 2255 to relitigate a claim that was previously rejected on direct appeal."), *Onley v. United States*, 433 F.2d 161, 162 (9th Cir. 1965) ("Having raised this point unsuccessfully on direct appeal, appellant cannot now seek to relitigate it as part of a petition under § 2255.") . The Court concludes that are no facts asserted in this motion that would support the claim that representation of counsel fell below an objective

standard of reasonableness.

**CONCLUSION**

IT IS HEREBY ORDERED that motion pursuant to 28 U.S.C. § 2255 (ECF No. 2301) on the grounds of ineffective assistance of counsel filed by the Defendant is denied. IT IS FURTHER ORDERED that Gerardo A. Gonzalez is relieved from further representation of the Defendant on this matter.

A certificate of appealability must be obtained in order to pursue an appeal from a final order in a Section 2255 habeas corpus proceeding. 28 U.S.C. § 2253(c)(1)(B). A certificate of appealability may issue "if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A certificate should issue where the prisoner shows that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right, and whether the district court was correct in its procedural ruling. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000). The Court finds that reasonable jurists could not find Defendant's claim that he was entitled to relief under 28 U.S.C. § 2255 to be debatable.

A certificate of appealability is denied.

DATED: January 11, 2017

**WILLIAM Q. HAYES**
United States District Judge